# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BONITA SHREVE, *et al.*,

      *Plaintiffs,*

    v.

U.S. POSTAL SERVICE, *et al.*,

      *Defendants.*

Civil Action No. 3:25-cv-214

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGEMNT**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 1

    I.     Procedural History ................................................................................................. 1

    II.    Office of Legal Counsel's Opinion ...................................................................... 4

LEGAL STANDARD .......................................................................................................... 5

ARGUMENT ...................................................................................................................... 5

    I.     Plaintiffs lack a justiciable case. ......................................................................... 5

          A.    Plaintiffs rely on inadmissible evidence to establish justiciability. ............... 6

          B.    Because she has not plausibly alleged a credible and substantial threat of prosecution, Shreve does not have a justiciable case.................................... 8

          C.    Because none of its members has a justiciable case, GOA and GOF do not have associational standing......................................................................... 13

    II.    Plaintiffs seek improper remedies........................................................................ 17

CONCLUSION.................................................................................................................... 18

## **TABLE OF AUTHORITIES**

**Cases**

*Aronson v. Peoples Nat. Gas Co.,*
  180 F.3d 558 (3d Cir. 1999) ............................................................... 6

*Ass'n of Am. Physicians & Surgeons v. U.S. Food & Drug Admin.*,
  13 F.4th 531 (6th Cir. 2021) ............................................................. 17

*Blunt v. Lower Merion Sch. Dist.*,
  767 F.3d 247 (3d Cir. 2014) .............................................................. 14

*Camp Hill Borough Republican Ass'n v. Borough of Camp Hill*,
  665 F. Supp. 3d 617 (M.D. Pa. 2023),
  *aff'd*, 101 F.4th 266 (3d Cir. 2024) .................................................. 16

*Casa De Md. v. U.S. Dep't of Homeland Sec.*,
  924 F.3d 684 (4th Cir. 2019) ............................................................. 12

*Cherichel v. Holder*,
  591 F.3d 1002 (8th Cir. 2010),
  *abrogated on other grounds by Nasrallah v. Barr*, 590 U.S. 573 (2020) .............................. 12

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ........................................................................... 15

*Coffey v. United States*,
  No. CIV 08-0588 JB/LFG, 2011 WL 6013611 n.32 (D.N.M. Nov. 28, 2011),
  *aff'd*, 504 F. App'x 715 (10th Cir. 2012) ......................................... 7

*Gill v. Whitford*,
  585 U.S. 48 (2018) ........................................................................... 18

*Greenberg v. Lehocky*,
  81 F.4th 376 (3d Cir. 2023) .............................................................. 11

*Hedges v. United States*,
  404 F.3d 744 (3d Cir. 2005) .............................................................. 5

*Hunt v. Wash. State Apple Advert. Comm'n*,
  432 U.S. 333 (1977) .................................................................................. 16, 18

*Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*,
  188 F. Supp. 2d 486 (D.N.J. 2002) ........................................................ 16

*Jamal v. Kane*,
  96 F. Supp. 3d 447 (M.D. Pa. 2015) ...................................................... 12

*Khodara Env't, Inc. v. Blakey*,
  376 F.3d 187 (3d Cir. 2004) ..................................................................... 6

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ........................................................................ 5, 15, 17

*Melendez-Spencer v. Shack*,
  747 F. App'x 910 (3d Cir. 2018) .............................................................. 5

*Nat'l Commodity & Barter Ass'n, Nat'l Commodity Exch. v. Gibbs*,
  886 F.2d 1240 (10th Cir. 1989) ............................................................. 17

*Nat'l Shooting Sports Found. v. Att'y Gen. of New Jersey*,
  80 F.4th 215 (3d Cir. 2023) ............................................................ *passim*

*NLRB v. Teamsters, Chauffers, Helpers & Taxicab Drivers, Local Union 327*,
  419 F.2d 1282 (6th Cir. 1970) ............................................................... 18

*Pipito v. Lower Bucks Cnty. Joint Mun. Auth.*,
  822 F. App'x 161 (3d Cir. 2020) .............................................................. 9

*PJM Power Providers Grp. v. FERC*,
  88 F.4th 250 (3d Cir. 2023) ................................................................... 13

*Pub. Citizen v. Burke*,
  655 F. Supp. 318 (D.D.C. 1987),
  *aff'd*, 843 F.2d 1473 (D.C. Cir. 1988) ................................................... 12

*Reilly v. Ceridian Corp.*,
  664 F.3d 38 (3d Cir. 2011) ..................................................................... 15

*Religious Sisters of Mercy v. Becerra*,
    55 F.4th 583 (8th Cir. 2022) ................................................................................. 17

*Renne v. Geary*,
    501 U.S. 312 (1991) ............................................................................................. 5

*Schmidt v. Lessard*,
    414 U.S. 473 (1974) ............................................................................................. 17

*Short v. N.J. Dep't of Educ.*,
    No. 23-21105, 2024 WL 3424729 (D.N.J. July 16, 2024) ....................................... 14

*Smith v. City of Allentown*,
    589 F.3d 684 (3d Cir. 2009) ................................................................................. 7

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ............................................................................................... 6

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ....................................................................................... 15, 18

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) .................................................................................... 9, 10, 11

*Trump v. CASA, Inc.*,
    606 U.S. 831 (2025) ............................................................................................. 17

*Trump v. New York*,
    592 U.S. 125 (2020) ............................................................................................. 6

*United States v. Bernal-Salinas*,
    No. 5:20-CR-244-FL-1, 2022 WL 4084412 (E.D.N.C. Sept. 6, 2022) ...................... 11

*United States v. France*,
    No. 1:19-CR-103, 2022 WL 4128548 (N.D. Ga. June 24, 2022) ............................ 11

*United States v. Perez*,
    No. 3:23-cr-92, 2025 WL 744279 (D. Conn. Mar. 7, 2025) .................................... 11

*United States v. Reyes*,
    18 F.3d 65 (2d Cir. 1994) .................................................................................. 7

*Warth v. Seldin*,
    422 U.S. 490 (1975) ...................................................................................... 13

*Whole Woman's Health v. Jackson*,
    595 U.S. 30 (2021) ......................................................................................... 8

*Williams v. Borough of W. Chester*,
    891 F.2d 458 (3d Cir. 1989) ........................................................................... 5

*Wilson v. State Bar of Ga.*,
    132 F.3d 1422 (11th Cir. 1998) ..................................................................... 11

*Zimmerman v. City of Austin*,
    881 F.3d 378 (5th Cir. 2018) ......................................................................... 18

**Statutes**

18 U.S.C. § 1715 ......................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 56(a) ........................................................................................ 5

Fed. R. Civ. P. 56(c)(1) .................................................................................... 6

Fed. R. Civ. P. 65(d)(1)(C) ............................................................................. 17

Fed. R. Civ. P. 56(c)(4) .................................................................................... 6

Fed. R. Evid. 805 ............................................................................................. 7

**Regulations**

39 C.F.R. § 211.2 ................................................................................................................ 2

**Other Authorities**

68 Cong. Rec. 2983 (1927)................................................................................................ 2

Paul Frew & Gene Petrino, *2025 Package Theft Annual Report and Statistics*, Security.org (Nov. 25, 2025), https://www.security.org/package-theft/annual-report/ (finding, among other things, that $12 billion in packages were stolen in 2024).................................................................. 15

*Transporting Firearms and Ammunition*, TSA, https://www.tsa.gov/travel/transporting-firearms-and-ammunition (last accessed Jan. 14, 2026)......................................................................... 14

USPS Pub. 52 § 43, USPS Postal Explorer, https://pe.usps.com/text/pub52/pub52c4_009.htm ... 2

## INTRODUCTION

This case should be dismissed.  As set forth herein, the Attorney General recently asked the Office of Legal Counsel ("OLC") whether 18 U.S.C. § 1715, which bars the shipment of handguns through the mail, infringes on the Second Amendment, and if so, whether the Department of Justice should cease prosecuting violations of the statute. OLC in a published opinion determined that § 1715's prohibition on mailing protected firearms "operates as a substantial burden on citizens' Second Amendment rights." As such, OLC concluded that "the Department of Justice should cease prosecutions under the statute with respect to protected firearms." OLC opinions are legally binding on the Executive Branch.

Here, two organizational Plaintiffs and Ms. Shreve bring a pre-enforcement challenge to 18 U.S.C. § 1715, claiming it violates their Second Amendment rights. But such a pre-enforcement challenge is presumptively not justiciable unless Plaintiffs can allege facts establishing, among other things, that Shreve faces a substantial and credible threat that § 1715 will be enforced against her. And Plaintiffs cannot make that showing. There have been no recent prosecutions of § 1715 in Pennsylvania—and Defendants are not aware of any such prosecutions in the state in the last decade. Most importantly, in the binding OLC opinion, Defendants have disavowed any prosecution of Shreve based on a shipping of her handgun through the U.S. Postal Service. Plaintiffs do not have standing, Plaintiffs do not bring a ripe pre-enforcement challenge, and this Could should dismiss this case for lack of jurisdiction.

## BACKGROUND

### I. Procedural History

Three Plaintiffs initiated this action by suing the U.S. Postal Service, U.S. Postal Inspection Service, the acting Postmaster General, the Chief Postal Inspector, and the Department of Justice.

Compl. for Decl. & Injunctive Relief ¶¶ 11–25, ECF No. 1 ("Compl."). The Plaintiffs are Bonita Shreve, Gun Owners of America (GOA), and Gun Owners Foundation (GOF). *Id.* ¶¶ 14–20. They claim that 18 U.S.C. § 1715 and its implementing regulations violate the Second Amendment. *Id.* ¶¶ 11–12.

Congress enacted § 1715 in 1927. *See* 68 Cong. Rec. 2983 (1927). The law reads in relevant part:

> Pistols, revolvers, and other firearms capable of being concealed on the person are nonmailable and shall not be deposited in or carried by the mails or delivered by any officer or employee of the Postal Service.

18 U.S.C. § 1715. The statute and implementing regulations provide for certain exceptions to the general prohibition on mailing firearms, including permitting the shipment of concealable firearms to the military, federal law enforcement agencies, and bona fide firearm dealers. *Id.*; 39 C.F.R. § 211.2 (incorporating by reference the Postal Service Manuals); USPS Pub. 52 § 43, USPS Postal Explorer, https://pe.usps.com/text/pub52/pub52c4_009.htm (last accessed Jan. 14, 2026). Section 1715 imposes criminal penalties—a fine or imprisonment of not more than two years—for anyone who "knowingly deposits for mailing or delivery or knowingly causes to be delivered by mail according to the direction thereon, or at any place to which it is directed to be delivered by the person to whom it is addressed, any pistol, revolver, or firearm declared nonmailable by this section[.]" 18 U.S.C. § 1715.

Plaintiffs filed a motion for summary judgment, arguing that § 1715 violates the Second Amendment. *See generally* Memo. ISO Pls.' Mot. for Summ. J., ECF 24 ("Pls.' Memo"). Plaintiffs assert that Shreve, GOA, and GOF have standing to sue and have brought justiciable challenges to § 1715. *Id.* at 9–13.

Individual Plaintiff Shreve, who is also a member of Plaintiff GOA, resides in Blair County, Pennsylvania and is a law-abiding person eligible to acquire and possess firearms under state and

federal law. Decl. of Bonita Shreve ("Shreve Decl.") ¶¶ 2, 4–5, ECF 25-1. Although not expressly stated in her declaration, Shreve implies in her declaration that she is over 21, is not a licensed firearms dealer, and does not hold a federal firearms license. *Id.* ¶¶ 2–3, 8. Shreve alleges that she lawfully owns a Bersa Thunder .380 ACP but desires to purchase a new handgun. *Id.* ¶ 4–5. If and when she purchases that new handgun, Shreve claims that she wants to lawfully gift the Bersa .380 to her father, Aruther Zimmerman, who lives three hours away in Lebanon County, Pennsylvania. *Id.* ¶¶ 5–6. Shreve states that she does not plan on seeing her father anytime soon and instead wishes to use the U.S. Postal Service to mail the handgun to her father. *Id.* ¶¶ 6, 9–10.

Plaintiffs submit no declaration from Shreve's father. Instead, Shreve claims in her declaration that her father is a "law-abiding person, eligible to acquire and possess firearms under both state and federal law." *Id.* ¶ 5. GOA's Pennsylvania State Director Val Finnell also submits a supplemental declaration to assert that Zimmerman told Finnell that "he [Zimmerman] wishes to receive, obtain, and possess the handgun that . . . Shreve intends to gift to him." Supp. Decl. of Val Finnell ("Finell Suppl. Decl.") ¶ 4, ECF 25-1. Zimmerman allegedly told Finnell that he (Zimmerman) "cannot obtain this gifted firearm from his daughter, because it is currently illegal for Plaintiff Shreve to mail it to him through the postal service." *Id.* ¶ 4.

Plaintiff GOA describes itself as an organization dedicated to defending the Second Amendment rights of gun owners. Decl. of Val Finnell ("Finnell Decl.") ¶ 4, ECF 25-1. GOA brings this suit on behalf of its over two million members, including Shreve. *Id.* It asserts harm to Shreve, as described above, and to another unnamed member of GOA. *Id.* ¶ 14. According to Finnell, this unnamed member operates a firearms training academy and "sometimes" travels out of state for training sessions. *Id.* Instead of driving, the unnamed member wishes to mail his or her firearm to the training site and travel by air without the firearm. *Id.* Finnell claims that this

3

unnamed member does not want to use TSA's process for checking firearms "due to concerns about theft of the[] handgun while in the airline's possession." *Id.* As a catchall, GOA also claims that its members generally wish to ship their firearms through the U.S. Postal Service. *Id.* ¶ 13.

Plaintiffs seemingly provide no declaration from any member or leader of GOF. Instead, Plaintiffs assert information about GOF through Finnell, who does not appear to be either a member or leader of GOF. Finnell claims that GOF has no members. Finnell Decl. ¶ 5. Instead, GOF purports to sue on behalf of its "supporters," alleging through Finnell that its supporters fund GOF's activities, and that some of those supporters wish to use the U.S. Postal Service to mail their lawfully owned handguns. *Id.* ¶ 6.

Plaintiffs seek broad relief. *See* Pls.'s Mot. for Summ. J., ECF 23; Pls.' Proposed Order, ECF 23-4. They ask this Court to declare that 18 U.S.C. § 1715 and its implementing postal regulations violate the Second Amendment. *See* Pls.'s Mot. for Summ. J.; Pls.' Proposed Order. And they ask this Court to permanently enjoin Defendants from enforcing the statute or its implementing regulation as to anyone. *See* Pls.'s Mot. for Summ. J.; Pls.' Proposed Order.

## II.   Office of Legal Counsel's Opinion

The Attorney General recently asked the Office of Legal Counsel ("OLC") whether 18 U.S.C. § 1715 infringes on the Second Amendment, and if so, whether the Department of Justice should cease prosecuting violations of the statute. Ex. 1 (*Constitutionality of 18 U.S.C. § 1715*, Slip Op., O.L.C., Jan. 15, 2026, https://www.justice.gov/olc/media/1424001/dl). On January 15, 2026, OLC addressed those questions in a published opinion—an opinion that mentions this case. *Id.* OLC determined that § 1715 is unconstitutional under the Second Amendment as applied to the proposed conduct at issue here. *Id.* OLC concluded that "[b]ecause the application of [18 U.S.C. § 1715] to constitutionally protected firearms violates the Second Amendment, we

conclude that the Department of Justice should cease prosecutions under the statute with respect to protected firearms." *Id.*

## LEGAL STANDARD

Defendants move for summary judgment under Rule 56. Rule 56 requires a court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At the summary judgment stage, Plaintiffs can no longer rely on their pleadings or mere allegations, as they are not evidence for purposes of summary judgment. *See Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (explaining that "factually unsupported allegations contained in . . . pleadings" are not "evidence" for the purpose of summary judgment*); Melendez-Spencer v. Shack*, 747 F. App'x 910, 913 (3d Cir. 2018) (explaining that "allegations disputed in a responsive pleading . . . are not evidence that can support or withstand summary judgment"). Plaintiffs must set forth by affidavit or other admissible evidence specific facts establishing standing and the merits of their claim. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

## ARGUMENT

### I.    Plaintiffs lack a justiciable case.

Article III of the Constitution limits a federal court's jurisdiction to "Cases" and "Controversies." *Nat'l Shooting Sports Found. v. Att'y Gen. of New Jersey*, 80 F.4th 215, 218 (3d Cir. 2023). Because a federal court should start with the presumption that it lacks jurisdiction, Plaintiffs bear the burden of establishing Article III jurisdiction. *See Renne v. Geary*, 501 U.S. 312, 316 (1991); *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). Article III requires Plaintiffs to establish standing and that their case is ripe—two justiciability requirements that "often boil down to the same question." *Nat'l Shooting Sports Found.*, 80 F.4th at 219 (citation

omitted). When plaintiffs fail in their burden to establish jurisdiction, dismissal is the proper remedy. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

To establish standing, Plaintiffs must show that they have an injury "that is concrete, particularized, and imminent rather than conjectural or hypothetical." *Trump v. New York*, 592 U.S. 125, 131 (2020). A concrete and imminent injury is one that is "certainly impending," or there must at least be "a substantial risk that the harm will occur." *Nat'l Shooting Sports Found.*, 80 F.4th at 218 (citation omitted). Similarly, to establish a ripe case, Plaintiffs must show that they have not brought a premature case that depends on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.* at 219 (citation omitted); *Khodara Env't, Inc. v. Blakey*, 376 F.3d 187, 196 (3d Cir. 2004).

None of the Plaintiffs here has a justiciable case. Shreve has not brought a justiciable pre-enforcement challenge to § 1715, since she is no longer in any conceivable danger of prosecution under that statute. And neither GOA nor GOF has associational standing to challenge § 1715. This Court should thus enter judgment in Defendants' favor and dismiss this case for lack of jurisdiction.

### A. Plaintiffs rely on inadmissible evidence to establish justiciability.

Even if the OLC Opinion did not conclusively address the issues in this case, which it does, Plaintiffs fail to adduce evidence sufficient to carry their burden on summary judgment. Rule 56 requires a party moving for summary judgment to support its factual contentions in the manner mandated by Rule 56(c). *See* Fed. R. Civ. P. 56(c)(1). Rule 56(c)(4) requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id.* at 56(c)(4); *see also Aronson v. Peoples Nat. Gas Co.,* 180 F.3d 558, 564 n.2 (3d Cir. 1999). Plaintiffs alleged standing and ripeness are based on inadmissible evidence that does not meet the requirements of Rule 56. In particular, much of Plaintiffs motion relies on

hearsay, and "[h]earsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment." *Smith v. City of Allentown,* 589 F.3d 684, 693 (3d Cir. 2009). And where a statement offered to support a summary judgment motion contains double hearsay, the movant "must demonstrate that both layers of hearsay would be admissible at trial." *Id.* (citing Fed. R. Evid. 805).

Plaintiffs here attempt to use inadmissible evidence to establish numerous facts supporting their justiciability arguments. *First*, Plaintiffs rely on inadmissible evidence to establish that Shreve's father, Zimmerman, is a law-abiding person who can lawfully own and possess a firearm under state and federal law. *See* Pls.' Statement of Material Facts at ¶¶ 5, 10, 14, ECF 25 ("Pls.' SFM"). Plaintiffs have not submitted any declaration from Zimmerman but attempt to establish this fact and others about Zimmerman through Shreve and Finnell; neither of whom would have sufficient personal knowledge of such facts. Hearsay—what Zimmerman told Shreve and Finnell—would be the only way that Shreve and Finnell would know that Zimmerman can lawfully own and possess a firearm under state and federal law. Thus, Shreve's and Finnell's statements about Zimmerman are hearsay with no exception. *See Coffey v. United States*, No. CIV 08-0588 JB/LFG, 2011 WL 6013611, at *5 n.32 (D.N.M. Nov. 28, 2011) (finding that "[i]f not speculation or lacking in personal knowledge, [a person's] statement falls within this category of implied hearsay, as it impliedly relates what someone told [that person]"), *aff'd*, 504 F. App'x 715 (10th Cir. 2012); *see also United States v. Reyes*, 18 F.3d 65, 69 (2d Cir. 1994) ("[A]lthough the jury was not told exactly what words Francisco and Fernando had spoken, Caggiano's testimony clearly conveyed the substance of what they had said."). Unless Plaintiffs provide a declaration from Zimmerman, there is no admissible evidence in the record establishing Zimmerman's status as a lawful firearm owner.

*Second*, Plaintiffs rely on evidence in the Finnell declaration to claim that one of GOA's unnamed members has standing to sue. *See* Finnell Decl. ¶ 14. This derives entirely on what this unnamed member told Finnell. *See id.* (repeatedly stating that "this member explained" the facts to Finnell). For the same reasons explained above, that is inadmissible hearsay that this Court cannot consider at the summary judgment stage. If Plaintiffs want this Court to consider this unnamed members' testimony, that unnamed member must submit a declaration.

*Third*, Plaintiffs provide no declaration from a member, leader, or anyone directly associated with GOF. Plaintiffs attempt to assert facts about GOF through Finnell, who is the Pennsylvania State Director for GOA. *See* Finnell Decl. ¶¶ 2, 5. But nowhere in Finnell's declarations does he aver that he has any direct association or connection with GOF. *See generally id.*; Finnell Supp. Decl. Unless Plaintiffs provide further declarations, Plaintiffs have not established that Finnell has any personal knowledge about GOF, and thus, the Court does not have any admissible evidence it can consider about GOF and its standing to sue.

**B. Because she has not plausibly alleged a credible and substantial threat of prosecution, Shreve does not have a justiciable case.**

Shreve has brought a pre-enforcement challenge to 18 U.S.C. § 1715—or in other words, she wants to challenge the validity of the statute before it is enforced against her. But a pre-enforcement challenge is "the exception rather than the rule[,]" as no one has an "unqualified right to pre-enforcement review . . . [e]ven in constitutional cases[.]" *Nat'l Shooting Sports Found.*, 80 F.4th at 219 (citation omitted); *see also Whole Woman's Health v. Jackson*, 595 U.S. 30, 49 (2021). Indeed, the Supreme Cout has emphasized that pre-enforcement review is severely limited and warranted only "under circumstances that render the threatened enforcement sufficiently imminent." *Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 158–59 (2014). To bring a  pre-enforcement challenge, Shreve must establish that she "(1) intend[s] to take action that is (2)

arguably affected with a constitutional interest but is (3) arguably forbidden by the Law, and (4) the threat of enforcement against [her] is substantial . . . [and] credible."[1] *Nat'l Shooting Sports Found.*, 80 F.4th at 219–20 (internal quotation marks omitted).

First, Shreve has not established prong two in her opening brief. As explained above in Part I.A., Plaintiffs have not provided admissible evidence that Shreve's father, Zimmerman, can lawfully own a firearm under state and federal law. And Shreve arguably lacks a Second Amendment right to ship her firearm to an individual who cannot lawfully own a firearm under state or federal law.  Thus, unless and until Plaintiffs present admissible evidence establishing such a fact, Plaintiffs have failed to establish that Shreve intends to take an action that is affected by a constitutional interest.

But even if Plaintiffs later present admissible evidence establishing prong two, Plaintiffs nonetheless cannot establish prong four. When determining if a plaintiff faces a credible and substantial threat of prosecution, the Third Circuit and Supreme Court direct courts to consider two categories of indicators: past use of enforcement power and current enforcement power.  *See Nat'l Shooting Sports Found.*, 80 F.4th at 220; *Driehaus*, 573 U.S. at 158–65. Shreve argues that she faces a substantial and credible threat of enforcement because "Defendants have not disclaimed enforcement of 18 U.S.C. § 1715 [and implementing regulations]." Pls.' Memo at 12. No longer. Not only have Defendants disavowed prosecutions of § 1715 as to the shipment of protected

---

[1]  Defendants note that the caselaw in the Third Circuit is not completely clear on whether the pre-enforcement test is born from ripeness, standing, or both. *Compare Nat'l Shooting Sports Found.*, 80 F.4th at 219 (indicating that the pre-enforcement review presents both standing and ripeness questions), *with Pipito v. Lower Bucks Cnty. Joint Mun. Auth.*, 822 F. App'x 161, 164 (3d Cir. 2020) (indicating that pre-enforcement review is a standing question). However, the three-part test is the same regardless of how the Court considers the issue. Defendants use the term "justiciability" throughout to capture both standing and ripeness.

firearms, *see* Ex. 1, but all indicators point away from a credible and substantial threat of enforcement.

**Past Enforcement Power.** "A strong sign of future enforcement is that a law has been enforced against the plaintiff, a closely related party, or others for similar conduct." *Nat'l Shooting Sports Found.*, 80 F.4th at 220 (citing *Driehaus*, 573 U.S. at 159–60). For example, the Supreme Court in *Driehaus* found a "credible" and "substantial" threat of prosecution where the plaintiff established that it had already been the subject of a complaint under the challenged law and the enforcement commission had "actually found probable cause to believe" that the plaintiff violated the challenged law. 573 U.S. at 164. By contrast, the Third Circuit in *National Shooting Sports Foundation* rejected a pre-enforcement Second Amendment challenge to a state firearm statute because the organizational plaintiff had failed to establish that the statute had ever been enforced against plaintiff, its members, anyone similarly situated, or anyone else in the state. 80 F.4th at 220.

On past enforcement, Shreve identifies no instance where she, a closely related party, or anyone gifting a firearm to a family member or friend through the use of the U.S. Mail has been recently prosecuted under 18 U.S.C. § 1715. She cites no recent prosecutions of § 1715 in any of Pennsylvania's three federal judicial districts. And that evidence is missing for a reason. As far as Defendants are aware, there has not been a single prosecution of § 1715 in Pennsylvania in the last decade. The best Shreve can show is a spattering of prosecutions in other states under substantially different circumstances, including multi-defendant, multi-count cases involving firearms trafficking and illegal aliens. *See* Pls.' Memo at 13 (first citing *United States v. France*, No. 1:19-CR-103, 2022 WL 4128548, at *12 (N.D. Ga. June 24, 2022) (prosecuting co-defendants for violating § 1715 after the government conducted a search warrant in the Virgin Islands and

found evidence that the defendants were operating a "gun-making workshop"); then citing *United States v. Bernal-Salinas*, No. 5:20-CR-244-FL-1, 2022 WL 4084412, at *1 (E.D.N.C. Sept. 6, 2022) (prosecuting an illegal alien for violating § 1715 in addition to prosecuting him under 18 U.S.C. §§ 922(g) and 924 for "knowingly possessing ammunition . . . while knowing that he was an alien illegally and unlawfully in the United States"); and then citing *United States v. Perez*, No. 3:23-cr-92, 2025 WL 744279, at *1, 16 (D. Conn. Mar. 7, 2025) (prosecuting five defendants in a multi-count indictment involving a "firearms trafficking conspiracy" and "drug dealing")).

**Current Enforcement Power.**   In *Driehaus*, the Supreme Court explained that where both private actors and government officials may enforce the challenged law, the risk of enforcement is greater.  *Driehaus*, 573 U.S. at 164.  Further, where the government disavows prosecution, that is strong evidence weighing against a credible threat of prosecution. *See Nat'l Shooting Sports Found.*, 80 F.4th at 221 (no standing where the attorney general disavowed prosecuting "participati[on] in 'lawful commerce,' which is all the [plaintiff] has said it wants to do"); *Wilson v. State Bar of Ga.*, 132 F.3d 1422, 1428–29 (11th Cir. 1998) (no standing where state bar took the position that rule did not bar planned conduct).

Indeed, courts in the Third Circuit have found lack of standing in similar cases where the government expressly disavows prosecuting the challenged conduct.  *See Greenberg v. Lehocky*, 81 F.4th 376, 386 (3d Cir. 2023) ("Greenberg also fails to establish he faces a credible threat of prosecution for his planned speech because there is compelling contrary evidence that no threat exists. Defendants disavow enforcement for any of Greenberg's planned conduct."); *Jamal v. Kane*, 96 F. Supp. 3d 447, 454 (M.D. Pa. 2015) ("The explicit disavowal of enforcement by District Attorney Williams eliminates any imminent threat of injury as to that defendant and his

office. Hence, the court is compelled to grant District Attorney Williams' Rule 12(b)(6) motion for lack of standing.").

Shreve cannot show that Defendants' current enforcement power points to a credible and substantial threat of enforcement. No private parties can bring actions or complaints against any alleged violator, which further weakens Shreve's pre-enforcement theory. *See Nat'l Shooting Sports Found.*, 80 F.4th at 221 (finding that risk of enforcement "is low when . . . only the Attorney General can enforce this Law").

Most importantly, OLC has released an opinion finding that because "the application of section 1715 to constitutionally protected firearms violates the Second Amendment," the Department of Justice "should cease  prosecutions under the statute with respect to protected firearms." Ex. 1. Although not binding on courts, such an OLC opinion is binding on the executive branch and Attorney General. *See Casa De Md. v. U.S. Dep't of Homeland Sec.*, 924 F.3d 684, 692 n.1 (4th Cir. 2019) ("OLC opinions 'reflect[ ] the legal position of the executive branch' and 'are generally viewed as providing binding interpretive guidance for executive agencies.'" (citation omitted)); *Cherichel v. Holder*, 591 F.3d 1002, 1016 n.17 (8th Cir. 2010) (same), *abrogated on other grounds by Nasrallah v. Barr*, 590 U.S. 573 (2020); *Pub. Citizen v. Burke*, 655 F. Supp. 318, 321–22 (D.D.C. 1987) ("[A]n Attorney General's opinion is binding as a matter of law on those who request it until withdrawn by the Attorney General or overruled by the courts."), *aff'd*, 843 F.2d 1473 (D.C. Cir. 1988). Here, Defendants do not dispute that a Bersa .380 is a protected firearm under the Second Amendment. Thus, because the OLC opinion is binding on the executive branch, Defendants cannot prosecute Shreve under § 1715 for shipping her Bersa .380 to her father. Thus, Shreve faces no credible or imminent threat of prosecution.

In sum, Shreve's pre-enforcement theory is that she wants in the future to engage in conduct prohibited by § 1715, and that out-of-state prosecutors have occasionally enforced the law against others for factually different conduct.  That is not enough, especially since Defendants have disavowed prosecution of the statute as to Shreve shipping her protected firearm through the mail.  Shreve's pre-enforcement challenge is not justiciable, and the Court should enter judgment for Defendants and dismiss Shreve's claim for lack of jurisdiction.

### C. Because none of its members has a justiciable case, GOA and GOF do not have associational standing.

GOA and GOF claim they have associational standing to sue on behalf of their members. Pls.' Memo at 11. To demonstrate associational standing, GOA and GOF must establish that (1) at least one of their members has a justiciable case to sue in his or her own right, (2) the interests the association seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires the participation of an individual member in the lawsuit.  *PJM Power Providers Grp. v. FERC*, 88 F.4th 250, 265 (3d Cir. 2023), *amended*, 2024 WL 259448 (3d. Cir. 2024); *Warth v. Seldin*, 422 U.S. 490, 95 (1975).  GOA and GOF here fail on at least prong one of that inquiry.  They have not sufficiently alleged that any of their members has a justiciable case.

Starting with GOA, it attempts to establish that one of its members has a justiciable case in three ways: by asserting that its member Shreve has a justiciable case; by asserting that some unnamed member described in the Finnell declaration has a justiciable case; and by asserting that its unnamed members as a whole have a justiciable case.  Pls.' Memo at 9–13. Each of those theories fail.

First, as explained above in Part I.B., Shreve does not bring a justiciable pre-enforcement challenge.

Second, the unidentified member described in the Finnell declaration advances an even weaker theory of standing and ripeness than Shreve.  For starters, GOA cannot establish standing through an *unidentified* member, as the Third Circuit has held that to establish associational standing a plaintiff organization must "make specific allegations establishing that at least one *identified* member had suffered or would suffer harm." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 279–80 (3d Cir. 2014) (emphasis added) (citation omitted). And as explained above, GOA attempts to establish facts about this unnamed member through inadmissible evidence which this Court cannot consider at summary judgment. Even if considered, these vague assertions do not confer standing.  This unknown member—who apparently "sometimes" attends firearms trainings outside Pennsylvania—claims injury because he or she would prefer to ship a handgun to the training location and then fly by air without the handgun to that location.  Finnel Decl. ¶ 14.  But GOA itself concedes that TSA permits handguns to be checked as airline luggage. *See id.*[2]  GOA nonetheless alleges that this member prefers not to check the firearm due to "concerns" that the handgun might be stolen while in TSA's or the airline's custody. *Id.*

That "concern" is too speculative and irrational to establish standing*.  See Short v. N.J. Dep't of Educ.*, No. 23-21105, 2024 WL 3424729, at *5 (D.N.J. July 16, 2024)  (finding that "claims dependent on speculative fear . . . [are] too attenuated to confer standing"); *City of Los Angeles v. Lyons*, 461 U.S. 95, 107 n.8 (1983) ("It is the *reality* of the threat of repeated injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions.").  On speculation, GOA alleges no facts showing that such theft is "certainly impending." *See Nat'l Shooting Sports*

---

[2]  TSA's process for checking firearms can be found here: *Transporting Firearms and Ammunition*, TSA,  https://www.tsa.gov/travel/transporting-firearms-and-ammunition (last accessed Jan. 14, 2026).

*Found.*, 80 F.4th at 218 (holding that an Article III injury must be "certainly impending"). Plaintiffs' theory of injury is entirely dependent on the future illegal acts of unknown third parties, and courts have regularly rejected such attenuated standing theories. *See Lujan*, 504 U.S. at 561; *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) (plaintiffs lacked standing because risk of identity theft "is dependent on entirely speculative, future actions of an unknown third party"). On irrationality, the risk of theft is at least as high, and more likely higher, when shipping a firearm by mail than when checking it through TSA. *See* Paul Frew & Gene Petrino, *2025 Package Theft Annual Report and Statistics*, Security.org (Nov. 25, 2025), https://www.security.org/package-theft/annual-report/ (finding, among other things, that over $8 billion in packages were stolen in 2025). This member also does not satisfy the elements for a pre-enforcement challenge, as the government has disavowed prosecution of the statute as to protected firearms through a binding OLC opinion. Ex. 1.

Finally, GOA appears to invoke a statistical probability theory of standing, claiming that because "some" of its millions of members "wish to use the U.S. Postal Service to mail their lawfully owned handguns and other concealable weapons," at least one must have standing. Compl. ¶ 19; Pls.' Memo at 12–13. But the Supreme Court has rejected that exact theory, holding that an association cannot establish standing based on "statistical probability that some of those members are threatened with concrete injury." *Summers v. Earth Island Inst.*, 555 U.S. 488, 497–98 (2009). And, again, because the government has ceased prosecution of the statute as to protected firearms through a binding OLC opinion, Ex. 1., GOA's members cannot establish the elements for a pre-enforcement challenge.

As to GOF, Plaintiffs have presented no admissible evidence about GOF or its members, as explained above in Part I.A. On that score alone, GOF has failed in its burden. But even if the

Court considered the inadmissible allegations about GOF presented in the Finnell Declaration, GOF still has not established standing. GOF concedes that it does not have any members at all. Finnell Decl. ¶ 5. Instead, it asserts that it possesses an "indicia of membership." Compl. ¶ 20 (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333 (1977)). Under *Hunt*, an organization has an "indicia of membership" if its supporters or members elect leadership, serve as the organization's leadership, and finance the organization's activities, including the case's litigation costs. *Hunt*, 432 U.S. at 344–45; *see also Camp Hill Borough Republican Ass'n v. Borough of Camp Hill*, 665 F. Supp. 3d 617, 626 (M.D. Pa. 2023), *aff'd*, 101 F.4th 266 (3d Cir. 2024). GOF must also show that "individuals that possess the 'indicia of membership' would individually have a justiciable case." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 188 F. Supp. 2d 486, 496 (D.N.J. 2002).

Even when considering the inadmissible evidence in the Finnell declaration, GOF fails to establish that it has an "indicia of membership." It only claims through Finnell that "Donations by supporters of GOF fund the organization's activities[.]" Finnell Decl. ¶ 5. But it does not allege that GOF supporters elect leadership or serve as the organization's leadership, meaning that it failed to allege two of the three factors courts consider in assessing indicia of membership. *See Hunt*, 432 U.S. at 344–45. Nor does GOF present any declaration from a supporter or member who would individually have a justiciable case. Thus, GOF's "indicia of membership" theory fails. This Court should dismiss GOA's and GOF's claim.

## II.     Plaintiffs seek improper remedies.

By asking the Court to enjoin the enforcement of § 1715 as to anyone, Plaintiffs seek universal relief. *See* Pls.'s Mot. for Summ. J.; Pls.' Proposed Order. Such a request is forbidden by *Trump v. CASA*, where the Supreme Court held that relief cannot extend "broader than necessary

to provide complete relief to each plaintiff with standing to sue." 606 U.S. at 861. To the extent this Court finds that one or more of the Plaintiffs here have standing, the maximum this Court can provide is a judgment and injunction protecting the Plaintiffs that this Court determines have standing.

And if this Court is inclined to grant GOA or GOF any relief, it should limit any injunction to the members that GOA and GOF have chosen to identify and who have standing to challenge § 1715. *Cf. Ass'n of Am. Physicians & Surgeons v. U.S. Food & Drug Admin.*, 13 F.4th 531, 541 (6th Cir. 2021); *Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 602 (8th Cir. 2022); *Nat'l Commodity & Barter Ass'n, Nat'l Commodity Exch. v. Gibbs*, 886 F.2d 1240, 1244–45 & n.2 (10th Cir. 1989). Otherwise, the government would have no way of knowing the organization members to whom a broader injunction would actually apply or of identifying in advance who was a member at the time this suit was brought (as required for standing). *E.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 n.5 (1992).

An injunction that applied beyond the members that GOA and GOF have chosen to identify would depart from the bedrock principle that injunctive relief must be specifically described "to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) (per curiam); *see* Fed. R. Civ. P. 65(d)(1)(C) (requiring that every injunction "describe in reasonable detail . . . the act or acts restrained or required"). To comply with an injunction, the enjoined party must be aware of to whom the injunction applies. *See NLRB v. Teamsters, Chauffers, Helpers & Taxicab Drivers, Local Union 327*, 419 F.2d 1282, 1283–84 (6th Cir. 1970) (per curiam) (injunction improper where it "provides no means of defining the people for whom protection is sought").

The unworkable scope of an injunction applying to all of GOA and GOF's unidentified members would also be inconsistent with bedrock principles regarding associational standing. Organizations may "assert the claims of [their] members*." Hunt*, 432 U.S. at 342.  Thus, to establish standing, organizations must identify an injured member or members whose claims they press. *Summers*, 555 U.S. at 498.  Neither GOA nor GOF has asserted that all its members have standing to bring this suit. Members who have no intention of ever sending or receiving concealable firearms through the mail would plainly lack standing. *See Zimmerman v. City of Austin*, 881 F.3d 378, 389 (5th Cir. 2018) (explaining that a "serious intention to engage in conduct proscribed by law" is necessary to establish standing). Such members thus have no claim the organizations could possibly assert on their behalf. *See Gill v. Whitford*, 585 U.S. 48, 73 (2018) ("A plaintiff's remedy must be tailored to redress the plaintiff's particular injury.").

Limiting injunctive relief to those GOA and GOF members who have been identified in this litigation would thus be consistent with standing, principles of equity, and the specificity requirements of Rule 65(d).

## CONCLUSION

For the foregoing reasons, the Court should enter judgment in favor of Defendants and dismiss this case for lack of jurisdiction.

Dated: January 16, 2026                    Respectfully submitted,

                                           BRETT A. SHUMATE
                                           Assistant Attorney General
                                           Civil Division

                                           ANDREW I. WARDEN
                                           Assistant Branch Director
                                           Federal Programs Branch

*/s/ Samuel S. Holt*
SAMUEL S. HOLT (CO Bar No. 59613)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Telephone: (202) 674-9761
Fax: (202) 616-8470
Samuel.Holt2@usdoj.gov

*Counsel for Defendants*