## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BONITA SHREVE, *et al.*, | |
| *Plaintiffs*, | Civil Action No.: 3:25-cv-00214 |
| v. | Judge: Stephanie L. Haines |
| U.S. POSTAL SERVICE, *et al.*, | |
| *Defendants*. | |

## BRIEF OF *AMICUS CURIAE*
## THE AMERICAN POSTAL WORKERS UNION, AFL-CIO

/s/ Timothy C. Hester

Timothy C. Hester (D.C. Bar No. 370707)
Eleanor C. Ondeck* (D.C. Bar No. 90039039)
Rina Zhang* (D.C. Bar No. 90039092)
Covington & Burling LLP
One CityCenter
850 10th Street NW
Washington, DC 20001
Telephone: (202) 662-5324
Fax: (202) 778-5324
thester@cov.com
eondeck@cov.com
rlzhang@cov.com

*Pro hac vice* pending

*Counsel for APWU*

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES....................................................................................iii

INTEREST OF AMICUS CURIAE ........................................................................ 1

ARGUMENT .......................................................................................................... 2

     I.     Current Postal Service Regulations Specifically Limit the Mailing of Handguns. ................................................................................................. 2

     II.    Expanding the Class of Persons Authorized to Mail Handguns May Endanger Postal Workers and the Public and Undermines Laws Governing Possession of Firearms............................................................ 5

          A.     Unlimited Mailing of Handguns Could Create Significant Safety Risks............................................................................................. 5

          B.     Unlimited Mailing of Handguns Undermines Existing Federal, State, and Local Laws on Gun Possession................................... 8

CONCLUSION........................................................................................................ 9

# TABLE OF AUTHORITIES

**Cases**

*Crawford v. Pennsylvania*, 277 A.3d 649, 669 (Pa. Commw. Ct. 2022)........................................ 8

**Statutes**

18 Pa. Cons. Stat. § 908(a)............................................................................................................. 8

18 Pa. Cons. Stat. § 908(c)............................................................................................................. 8

18 U.S.C. § 1703(a) ....................................................................................................................... 4

18 U.S.C. § 1715............................................................................................................. 2, 5, 6, 8, 9

18 U.S.C. § 922(g) ......................................................................................................................... 8

18 U.S.C. § 922(k) ......................................................................................................................... 8

39 U.S.C. § 101 *et seq.*................................................................................................................... 2

39 U.S.C. § 201 .............................................................................................................................. 2

39 U.S.C. § 401(2) ......................................................................................................................... 2

39 U.S.C. § 403 .............................................................................................................................. 2

**Other Authorities**

Bureau of Alcohol, Tobacco, Firearms and Explosives, U.S. Dep't of Just., *Firearms Commerce in the United States: Statistical Update 2024*, ATF Publication 5390.1 (2024), https://www.atf.gov/media/22706/download................................................................................ 6

Colo. Dep't of Pub. Health & Env't, *Unintentional Firearm Injuries*, https://cdphe.colorado.gov/colorado-gun-violence-prevention-resource-bank/injury-and-death-involving-firearms/unintentional ...................................................................................................... 6

FedEx, *How to Ship Firearms*, https://www.fedex.com/en-us/shipping/how-to-ship-firearms.html (last visited Mar. 3, 2026) ................................................................................................................ 5

*How Can I Know if a Gun Is Loaded or Unloaded?*, Gun Safety Training Pros (Sept. 21, 2021), https://gunsafetytrainingpro.com/how-can-i-know-if-a-gun-is-loaded-or-unloaded/................. 7

John Berrigan, Deborah Azrael & Matthew Miller, *The Number and Type of Private Firearms in the United States*, 704 ANNALS AM. ACAD. POL. & SOC. SCI. 70 (2023), https://journals.sagepub.com/doi/ 10.1177/00027162231164855 .............................................. 5

Jose Pagliery, *The Gun That Can Fire When You Drop It*, CNN (June 6, 2018), https://www.cnn.com/interactive/2018/06 /investigates/sig-sauer-p320-drop-fire/ .................. 6

*Trending Topics: When a Gun Goes Off Accidentally*, POLICE1 (Mar. 31, 2015), https://www.police1.com/officer-safety/articles/trending-topics-when-a-gun-goes-off-accidentally-ayNTXIDAUVK9phoy/ ...................................................... 6

UPS, *How to Ship Firearms*, https://www.ups.com/us/en/support/shipping-support/shipping-special-care-regulated-items/prohibited-items/firearms (last visited Mar. 3, 2026).................. 5

**Rules**

Cook Cnty., Ill., Code of Ordinances § 54-211(2), https://bit.ly/2Lcts75 ..................................... 8

Cook Cnty., Ill., Code of Ordinances § 54-211(3), https://bit.ly/2Lcts75 ..................................... 8

Cook Cnty., Ill., Code of Ordinances § 54-212(a), https://bit.ly/2Lcts75 .................................... 8

**Regulations**

27 C.F.R. § 478.11 ...................................................................................................................... 2

39 C.F.R. § 111.1(a) .................................................................................................................... 2

Domestic Mail Manual § 601.8.3 .............................................................................................. 2

U.S. Postal Serv., Administrative Support Manual § 274.21(d) (May 19, 2011), *amended by* Postal Bulletin No. 22306 ....................................................................................................... 4

U.S. Postal Serv., Administrative Support Manual § 274.21(e) (May 19, 2011), *amended by* Postal Bulletin No. 22306 ....................................................................................................... 4

U.S. Postal Serv., Publication 52 § 251, Postal Explorer (Feb. 2026), https://pe.usps.com/cpim/ftp/pubs/Pub52/pub52.pdf........................................................... 4

U.S. Postal Serv., Publication 52 § 432.1(a), Postal Explorer (Feb. 2026), https://pe.usps.com/cpim/ftp/pubs/Pub52/pub52.pdf........................................................... 4

U.S. Postal Serv., Publication 52 § 431.2, Postal Explorer (Feb. 2026), https://pe.usps.com/cpim/ftp/pubs/Pub52/pub52.pdf........................................................... 2

U.S. Postal Serv., Publication 52 § 432.21, Postal Explorer (Feb. 2026), https://pe.usps.com/cpim/ftp/pubs/Pub52/pub52.pdf........................................................ 2, 8

U.S. Postal Serv., Publication 52 § 432.22, Postal Explorer (Feb. 2026), https://pe.usps.com/cpim/ftp/pubs/Pub52/pub52.pdf........................................................ 3, 8

U.S. Postal Serv., Publication 52 § 432.2, Postal Explorer (Feb. 2026), https://pe.usps.com/cpim/ftp/pubs/Pub52/pub52.pdf........................................................ 3, 8

## INTEREST OF AMICUS CURIAE

Representing approximately 200,000 postal workers nationwide, the American Postal Workers Union, AFL-CIO ("APWU") is the second-largest union of American postal workers. The APWU represents employees of the United States Postal Service ("USPS") who work throughout postal operations in areas such as retail, mail processing, maintenance, transportation, and customer service.  For example, the APWU represents window clerks who accept packages from customers and ensure that those packages comply with postal regulations, as well as mail processing clerks who distribute packages across the Postal Service's vast processing network. The APWU also represents employees in the Postal Vehicle Service—those who move packages between postal facilities before they reach the carriers who deliver them to doorsteps.

While the Union does not set postal regulations, it has a unique perspective on how the employees responsible for following those regulations apply them in postal operations on a day-to-day basis.  Moreover, the Union has negotiated various rules and processes with the Postal Service to protect APWU bargaining unit members' safety and health at work, and supports the Postal Service's strict customer requirements on mailing guns precisely because they protect the safety of postal workers as well as customers and the public.  Through the shared experience of its bargaining unit members, the APWU has insight into the complex and intricate ways that mail gets posted, distributed, and delivered to customers.  The APWU has a mission to ensure the safety of its bargaining unit members in their handling of mail, and a strong interest in providing quality service to postal customers.[1]

---

[1] The APWU affirms that no counsel for a party authored this brief in whole or in part, and that no person other than the APWU or its counsel made any monetary contributions intended to fund the preparation or submission of this brief.

**ARGUMENT**

**I.    Current Postal Service Regulations Specifically Limit the Mailing of Handguns.**

As provided for by 18 U.S.C. § 1715, the Postal Service has promulgated regulations that impose specific limits on the mailing of handguns through the U.S. mail.  Section 1715 specifies that handguns "may be conveyed in the mails" by certain categories of persons "under such regulations as the Postal Service shall prescribe."  18 U.S.C. § 1715.  The postal regulations define the term "handgun" as "[p]istols, revolvers, and other firearms capable of being concealed on a person," which are typically "designed to be held and fired by the use of a single hand."  U.S. Postal Serv., Publication 52 § 431.2, Postal Explorer (Feb. 2026) [hereinafter Publication 52], https://pe.usps.com/cpim/ftp/pubs/Pub52/pub52.pdf.[2]

The regulations specify that handguns may be mailed only by "licensed firearm manufacturers, dealers, importers, or authorized agents of federal or state, territory, or district

---

[2] The regulations discussed here are contained in USPS Publication 52, which governs "Hazardous, Restricted, and Perishable Mail."  Publication 52 is incorporated by reference into the Domestic Mail Manual ("DMM").  DMM § 601.8.3.  The DMM's contents, including the rules in Publication 52, carry the force of law because they are incorporated by reference into the Code of Federal Regulations. 39 C.F.R. § 111.1(a) ("Mailing Standards of the United States Postal Service, [DMM] is incorporated by reference into this part with the approval of the Director of the Federal Register under 5 U.S.C. 552(a) and 1 CFR part 51.").

The Postal Reorganization Act of 1970 ("PRA"), 39 U.S.C. § 101 *et seq*., designated USPS as an "independent establishment of the executive branch of the Government of the United States" and imbued it with substantial general powers and rulemaking authority.  39 U.S.C. §§ 201, 403.  Congress granted USPS the "general power[]" of "adopt[ing], amend[ing], and repeal[ing] . . . regulations . . . as may be necessary in the execution of its functions." 39 U.S.C. § 401(2).

To the extent Publication 52 incorporates definitions of "handguns" and other firearm-related terms, those definitions derive from regulations administered by the Bureau of Alcohol, Tobacco, Firearms and Explosives, which defines such terms in its governing regulations.  *See* 27 C.F.R. § 478.11.

governments." *Id.* § 432.21. "[L]icensed firearm manufacturers, dealers, or importers" are permitted to mail handguns only to other "licensed firearm manufacturers, dealers, or importers," and must file a statement with the postmaster certifying they are a qualifying mailer and that "the addressees are licensed firearm manufacturers, dealers, or importers." *Id.* § 423.24. As for "authorized agents of federal or state, territory, or district governments," postal regulations specify the following exclusive categories of persons who may mail or receive a handgun via mail "for use in [their] official duties": (i) military and National Guard officers; (ii) qualifying law-enforcement officers; (iii) Postal Service employees authorized by the Chief Postal Inspector; (iv) federal enforcement personnel; (v) government watchmen; and (vi) designated purchasing agents for those agencies. *Id.* § 432.21. These authorized senders may only mail handguns "upon filing the required affidavit or certificate . . . signed by the addressee certifying that the addressee is qualified to receive the firearm under a particular category of" Section 432.21, and that "the firearm is for the official duty use of the addressee." *Id.* §§ 432.21, 432.22.

In accordance with federal law, postal regulations thus confine the sending and receiving of handguns to categories of persons with firearms training and experience in the safe transport of handguns—such as law enforcement agents, military personnel, and licensed firearms manufacturers, dealers or importers. Postal regulations also specifically limit the persons who can receive handguns through the mail—whether they be licensed firearms manufacturers, dealers or importers, or persons who attest to using handguns for official purposes or having authority to receive them. Both regulatory limitations—on those who can mail handguns and those who receive them—meet Congress's express instructions and also promote the safety of the mail and thereby the safety of APWU bargaining unit members, by confining the mailing of handguns to

categories of persons trained to handle and use handguns and who have a lawful reason to mail or receive them.

Further, postal regulations rely on senders and recipients to verify and validate the safety of handguns that are being mailed. Federal law generally bars postal employees from "opening any letter, postal card, package, bag, or mail entrusted to him." 18 U.S.C. § 1703(a). Postal workers refer to this as the "sanctity of the mail" and it is a fundamental principle that all postal workers protect. Postal regulations protect it too, instructing that postal employees "are not authorized to open mail sealed against inspection" unless a recognized exception applies. Publication 52 § 251.[3] Thus, postal workers, including APWU bargaining unit members receiving or sorting packages, are prohibited from and will not open sealed mail. While postal workers can, in the case of handguns, "require the mailer to open parcels containing firearms or give written certification that the weapon is unloaded," *id.* § 432.1(a), this rule depends on the sender disclosing to a postal clerk that a package contains a firearm and relies on the sender to know whether a gun is unloaded. *See infra* p. 6 (noting common mistakes around whether guns are in fact unloaded). This means that postal workers, and postal clerks in particular, rely on senders and recipients to ensure handguns navigate the postal system safely.

After a parcel is accepted at a retail counter, it is transported through the postal network to mail processing and distribution facilities where packages are fed into automated systems that separate, scan, and sort parcels by their external labels and barcodes. These machines sort thousands of parcels per hour but do not have the capability to inspect a package's contents. Even

---

[3] Only specific non-postal federal personnel—such as authorized U.S. Customs and Border Protection officers, U.S. Department of Agriculture officers, and certain federal export-control investigators—may open sealed mail under limited circumstances. *See* U.S. Postal Serv., Administrative Support Manual § 274.21(d)–(e) (May 19, 2011), *amended by* Postal Bulletin No. 22306.

packages that are sorted by hand or travel through other parts of the postal network do not have their contents disturbed. As a result, no process currently exists by which the Postal Service can automatically or manually identify packaged handguns that were not identified by their sender.[4]

## II. Expanding the Class of Persons Authorized to Mail Handguns May Endanger Postal Workers and the Public and Undermines Laws Governing Possession of Firearms.

Without the protective limitations on the mailing of handguns specified by 18 U.S.C. § 1715 and postal regulations, handguns mailed by individuals could flow unchecked through the U.S. mail. If that were to happen, the APWU has grave concerns for the safety of the postal network—principally for postal workers but also for postal customers and recipients of the mail. In addition, postal workers do not have the tools or resources to be aware of or enforce state and local laws restricting firearms possession, which could lead to widespread violations of local, state, and federal law due to intentional or unintentional noncompliance by handgun mailers.

### A. Unlimited Mailing of Handguns Could Create Significant Safety Risks.

The United States contains an exceptionally large number of privately-owned firearms, including a substantial and growing stock of handguns. In 2019, Americans privately possessed approximately 326 million firearms, 145 million of which are handguns. *See* John Berrigan, Deborah Azrael & Matthew Miller, *The Number and Type of Private Firearms in the United States*, 704 ANNALS AM. ACAD. POL. & SOC. SCI. 70 (2023), https://journals.sagepub.com/doi/10.1177/00027162231164855. And the number of privately-owned handguns is growing, with

---

[4] Major private carriers do not permit members of the general public to ship handguns. FedEx allows handgun shipments only by shippers who hold a Federal Firearms License and are approved under its firearms-shipping agreement. *See* FedEx, *How to Ship Firearms*, https://www.fedex.com/en-us/shipping/how-to-ship-firearms.html (last visited Mar. 3, 2026). UPS likewise limits handgun shipments to licensed importers, manufacturers, dealers, or collectors operating under a contractual firearms-shipping agreement. *See* UPS, *How to Ship Firearms*, https://www.ups.com/us/en/support/shipping-support/shipping-special-care-regulated-items/prohibited-items/firearms (last visited Mar. 3, 2026).

handguns comprising half of all firearms produced by U.S. manufacturers in 2023. *See, e.g.*, Bureau of Alcohol, Tobacco, Firearms and Explosives, U.S. Dep't of Just., *Firearms Commerce in the United States: Statistical Update 2024*, ATF Publication 5390.1 (2024), https://www.atf.gov/media/22706/download. No doubt, some of these handgun owners are APWU bargaining unit members.

Transporting these guns can be hazardous. Owners often fail to realize that "a firearm is unloaded" when, in fact, a bullet remains in the chamber. Colo. Dep't of Pub. Health & Env't, *Unintentional Firearm Injuries*, https://cdphe.colorado.gov/colorado-gun-violence-prevention-resource-bank/injury-and-death-involving-firearms/unintentional.[5]    And loaded guns can discharge upon impact when dropped accidentally. *See* Jose Pagliery, *The Gun That Can Fire When You Drop It*, CNN (June 6, 2018), https://www.cnn.com/interactive/2018/06/investigates/sig-sauer-p320-drop-fire/.

The current statutory restrictions on mailing handguns mitigate the risks of transporting handguns through the mail because they limit the ability to mail handguns to those who are presumptively familiar with handling handguns safely—such as law enforcement officers, military personnel, and licensed firearms manufacturers, dealers or importers. Those limitations mean that handguns can only be mailed by those best equipped to (1) ensure handguns are not loaded and (2) ensure handguns are packaged safely. Further, the statutory limitations in Section 1715 presumably reduced the overall volume of handguns that move through the postal network.

---

[5] Admittedly, even for persons with proper training, gun accidents are not uncommon. There are many documented instances of law enforcement officers accidentally shooting themselves while handling their service weapons. *Trending Topics: When a Gun Goes Off Accidentally*, POLICE1 (Mar. 31, 2015), https://www.police1.com/officer-safety/articles/trending-topics-when-a-gun-goes-off-accidentally-ayNTXIDAUVK9phoy/.

Without the limitations in Section 1715, the Postal Service and postal workers would be faced with a daunting new order. A handgun could be mailed by any person—regardless of whether they have any training to determine whether a gun is loaded, or any experience in shipping firearms safely. And the volume of handguns being mailed could multiply exponentially, thereby also multiplying the risk (either advertent or inadvertent) that unqualified or inexperienced persons could send or receive loaded guns through the U.S. mail.

Postal regulations are simply inadequate to address this new situation. As noted above, current postal regulations allow postal workers to "require the mailer to open parcels containing firearms or give written certification that the weapon is unloaded." *Id.* § 432.1(a). If a mailer were to open a parcel containing a handgun being mailed by an individual, it would involve significant risks, especially if a postal worker must manually inspect a handgun to ensure it is not loaded.[6] Doing this on a broad scale for guns mailed by less qualified senders requires training that postal workers do not uniformly have. Further, regardless of training, mechanisms to clear the chamber differ from gun to gun, making it difficult even through manual inspection for a postal clerk to ensure that a particular handgun is unloaded. And any such manual inspection would often occur in crowded post offices with nearby customers, coworkers, and limited space. Alternatively, postal workers could rely on the mailer's certification that the handgun is unloaded. But even in the best-case scenario, this is subject to mistakes, as noted above—particularly if any person is permitted to mail a handgun, regardless of experience or training. All these factors could increase the risk

---

[6] A gun must be physically handled to verify that it is unloaded. Handguns are typically inspected by ejecting the magazine and checking the chamber. *How Can I Know if a Gun Is Loaded or Unloaded?*, Gun Safety Training Pros (Sept. 21, 2021), https://gunsafetytrainingpro.com/how-can-i-know-if-a-gun-is-loaded-or-unloaded/.

that loaded handguns will move through the postal network like any other package, but with the obvious dangers of unintentional discharges in transit or upon delivery.

**B. Unlimited Mailing of Handguns Undermines Existing Federal, State, and Local Laws on Gun Possession.**

Under the authority of 18 U.S.C. § 1715, current postal regulations impose limitations regarding who can receive handguns through the mail. A law enforcement agent cannot mail a handgun without an "affidavit or certificate" verifying that the firearm is for the addressee's official use. Publication 52 § 432.21. Military personnel must certify "that the addressee is qualified to receive the firearm." *Id.* § 432.22. And licensed firearm manufacturers, dealers, or importers can only mail handguns to other "licensed firearm manufacturers, dealers, or importers." *Id.* § 423.24. Because of these limitations, the current regulatory framework controls who can receive a handgun in the mail and thereby prevents, or at least significantly limits, the ability of persons who are not authorized to possess a handgun in a particular state or municipality to receive one through the mail.

Without these limitations, persons could readily receive—by mail—handguns they are not permitted to possess. For example, federal law bans convicted felons from possessing "any firearm or ammunition." 18 U.S.C. § 922(g). Another federal law makes it a crime to "to possess…any firearm which has had the importer's or manufacturer's serial number removed." *Id.* § 922(k). Some states bar people from "possess[ing]" handguns "specially adapted for . . . silent discharge." *E.g.*, 18 Pa. Cons. Stat. § 908(a), (c); *see also Crawford v. Pennsylvania*, 277 A.3d 649, 669 (Pa. Commw. Ct. 2022). And some municipalities impose specific restrictions on gun possession. For example, Cook County, which encompasses the City of Chicago, has banned people from possessing certain semiautomatic pistols. Cook Cnty., Ill., Code of Ordinances §§ 54-211(2)–(3), 54-212(a), https://bit.ly/2Lcts75.

If the current statutory and regulatory framework governing the mailing of handguns is disrupted, senders and recipients could easily circumvent laws governing handgun possession. Window clerks accepting a package containing a handgun do not have the tools or resources to determine whether a handgun is being mailed to a person who is not permitted by law to receive it, or to identify whether the gun has some prohibited characteristic that makes it illegal to possess. Moreover, even if postal clerks had the resources to assess the legal compliance of a handgun package and determine whether such packages are authorized under federal, state, and local law, postal clerks have no authority to enforce those laws. Most likely a package would be referred to the Postal Service's Inspection Service, where conflicts in law face uncertain treatment. The current postal regulations require handgun mailers—who are themselves military, law enforcement, or state-licensed dealers, manufacturers, or importers—to attest that handguns are being sent to people authorized by law to receive them. Without these postal regulations and the statutory basis for them pursuant to 18 U.S.C. § 1715, illegal guns could flood the postal network and otherwise legal guns could end up in the hands of people barred from possessing them.

## CONCLUSION

The APWU supports Second Amendment rights, and for the foregoing reasons the APWU also supports Section 1715 and the current postal regulations, which reasonably govern how individuals can send or receive handguns in the mail. Postal regulations addressing the proper handling of handguns in the mail ensure the safety of postal workers and customers by limiting the mailing of handguns to those with experience and training in the handling and safety of firearms. These regulations also enhance compliance with federal, state, and local laws governing the possession of handguns by limiting the mailing of handguns to those specifically authorized to receive them.

Date: March 9, 2026

Respectfully submitted,

*/s/ Timothy C. Hester*

Timothy C. Hester (D.C. Bar No. 370707)
Eleanor C. Ondeck* (D.C. Bar No. 90039039)
Rina Zhang* (D.C. Bar No. 90039092)
Covington & Burling LLP
One CityCenter
850 10th Street NW
Washington, DC 20001
Telephone: (202) 662-5324
Fax: (202) 778-5324
thester@cov.com
eondeck@cov.com
rlzhang@cov.com

**Pro hac vice* pending

*Counsel for APWU*

10