**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BONITA SHREVE, *et al.*, | |
| | |
| Plaintiffs, | |
| | Civil Action No. 3:25-cv-214 |
| v. | |
| | |
| U.S. POSTAL SERVICE, *et al.*, | |
| | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO INTERVENE**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

    I.      Federal Firearm Laws ............................................................................................ 2

    II.     Procedural History ................................................................................................. 3

LEGAL STANDARD ......................................................................................................... 4

ARGUMENT ...................................................................................................................... 4

    I.      The States lack Article III standing to litigate the merits of the case. ................... 4

          A.     The States will not suffer a cognizable "pocketbook" injury traceable to any outcome of this case. ......................................................... 5

          B.     The States will not suffer a cognizable "sovereign" injury traceable to any outcome of this case. ...................................................................... 10

          C.     Permitting the States to intervene will remedy none of their alleged harms. ..................................................................................................... 12

    II.     The States lack a right to intervene. ..................................................................... 12

          A.     The States lack a direct interest in the outcome of this case. .................... 13

          B.     The States' alleged interests will not be affected by this case. ................. 18

    III.    The States lack grounds for permissive intervention. .......................................... 18

CONCLUSION ................................................................................................................. 20

## TABLE OF AUTHORITIES

**CASES**

*Alfred L. Snapp & Son, Inc. v. Puerto Rico*,
 458 U.S. 592 (1982) .......................................................................................... 10, 11

*Am. Deposit Corp. v. Schacht*,
 No. 95 C 207, 1995 WL 103723 (N.D. Ill. Mar. 6, 1995) ......................................... 19

*Barrett v. United States*,
 423 U.S. 212 (1976) ................................................................................................ 2

*Benjamin v. Dep't of Pub. Welfare*,
 432 F. App'x 94 (3d Cir. 2011) ......................................................................... 12, 13

*Bowen v. Pub. Agencies Opposed to Soc. Sec. Entrapment*,
 477 U.S. 41 (1986) ............................................................................................... 11

*Brody v. Spang*,
 957 F.2d 1108 (3d Cir. 1992) ......................................................................... 18, 19

*California v. ATF*,
 718 F. Supp. 3d 1060 (N.D. Cal. 2024) ................................................................. 16

*Cameron v. EMW Women's Surgical Center, P.S.C.*,
 595 U.S. 267 (2022) ............................................................................................. 10

*Chiles v. Thornburgh*,
 865 F.2d 1197 (11th Cir. 1989) ............................................................................. 17

*Clapper v. Amnesty Int'l USA*,
 568 U.S. 398 (2013) .................................................................................... 6, 10, 15

*Coal. for Humane Immigrant Rts. v. U.S. Dep't of Homeland Sec.*,
 780 F. Supp. 3d 79 (D.D.C. 2025), *appeal filed*, No. 25-5152 (D.C. Cir. Apr. 28, 2025) ......... 10

*Cuccinelli v. Sebelius*,
 656 F.3d 253 (4th Cir. 2011) ................................................................................ 11

*Defs. of Wildlife v. Martin*,
 No. 2:05-CV-00248-RHW, 2021 WL 5890661 (E.D. Wash. Dec. 13, 2021) ............................. 5

*Diamond v. Charles*,
 476 U.S. 54 (1986) ................................................................................................. 5

*Donaldson v. United States*,
  400 U.S. 517 (1971) ......................................................................................................... 13

*El Paso Cnty. v. Trump*,
  982 F.3d 332 (5th Cir. 2020) ............................................................................................. 8

*FDA v. Alliance for Hippocratic Med.*,
  602 U.S. 367 (2024) ......................................................................................................... 10

*Florida v. Mellon*,
  273 U.S. 12 (1927) ............................................................................................................ 8

*FTC v. Mercury Mktg. of Del., Inc.*,
  No. CIV.A.00-3281, 2004 WL 2110686 (E.D. Pa. 2004) ............................................... 14

*Haaland v. Brackeen*,
  599 U.S. 255 (2023) ......................................................................................................... 11

*Halderman v. Pennhurst State Sch. & Hosp.*,
  97 F.R.D. 522 (E.D. Pa. 1983) ......................................................................................... 19

*Harper v. Pub. Serv. Comm'n*,
  396 F.3d 348 (4th Cir. 2005) ........................................................................................... 10

*Harris v. Pernsley*,
  820 F.2d 592 (3d Cir. 1987) ........................................................................... 14, 15, 17, 18

*Haymond v. Lundy*,
  No. CIV.A. 99-5048, 2002 WL 31149289 (E.D. Pa. 2002) ............................................ 14

*Hines v. D'Artois*,
  531 F.2d 726 (5th Cir. 1976) ........................................................................................... 14

*Kleissler v. U.S. Forest Serv.*,
  157 F.3d 964 (3d Cir. 1998) ............................................................................................ 13

*Lee v. Kelley*,
  99 F.R.D. 340 (D.D.C. 1983), *aff'd sub nom.,* 747 F.2d 777 (D.C. Cir. 1984) ............. 17

*Linda R.S. v. Richard D.*,
  410 U.S. 614 (1973) ......................................................................................................... 11

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ........................................................................................................... 5

iii

*Massachusetts v. EPA,*
  549 U.S. 497 (2007) ........................................................................................... 11

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.,*
  72 F.3d 361 (3d Cir.1995) ................................................................................. 13

*New York v. United States,*
  505 U.S. 144 (1992) ........................................................................................... 11

*Nuesse v. Camp,*
  385 F.2d 694 (D.C. Cir. 1967) ........................................................................... 15

*Palladino v. Corbett,*
  No. CIV.A. 13-5641, 2014 WL 830046 (E.D. Pa. Mar. 4, 2014) ............................ 19

*Pennsylvania State Univ. v. U.S. Dept. of Health & Human Serv.,*
  142 F.R.D. 274 (M.D. Pa. 1992) .................................................................... 13, 14

*Pennsylvania v. New Jersey,*
  426 U.S. 660 (1976) ............................................................................................. 9

*Pennsylvania v. President U.S. of Am.,*
  888 F.3d 52 (3d Cir. 2018) ................................................................................... 4

*Pullmans Palace Car Co. v. Pennsylvania,*
  141 U.S. 18 (1891) ............................................................................................. 17

*Purpura v. Christie,*
  687 F. App'x 208 (3d Cir. 2017) ........................................................................... 8

*Regents of Univ. of California v. Pub. Emp. Rels. Bd.,*
  485 U.S. 589 (1988) ........................................................................................... 17

*Smith v. Pangilinan,*
  651 F.2d 1320 (9th Cir. 1981) ............................................................................ 14

*Texas v. United States,*
  805 F.3d 653 (5th Cir. 2015) .............................................................................. 13

*Toll Bros., Inc. v. Twp. of Readington,*
  555 F.3d 131 (3d Cir. 2009) ............................................................................... 12

*Town of Chester v. Laroe Ests., Inc.,*
  581 U.S. 433 (2017) ............................................................................................. 4

*Trump v. CASA, Inc.*,
  606 U.S. 831 (2025) ............................................................................................ 6

*United States v. Associated Milk Producers, Inc.*,
  534 F.2d 113 (8th Cir. 1976) ................................................................ 17, 19, 20

*United States v. Richardson*,
  418 U.S. 166 (1974) ............................................................................................ 9

*United States v. Texas*,
  599 U.S. 670 (2023) .................................................................................. 8, 9, 11

*United States v. Virgin Islands*,
  748 F.3d 514 (3d Cir. 2014) ...................................................................... 18, 19

*Washington v. FDA*,
  108 F.4th 1163 (9th Cir. 2024) ......................................................................... 5

*Wayne Land & Min. Grp., LLC v. Delaware River Basin Comm'n*,
  959 F.3d 569 (3d Cir. 2020) .............................................................................. 4

## STATUTES

18 U.S.C. § 922 ............................................................................................ *passim*

18 U.S.C. § 926A ............................................................................................... 7

18 U.S.C. § 1715 .......................................................................................... *passim*

28 U.S.C. § 516 ................................................................................................ 19

28 U.S.C. § 530D ............................................................................................... 3

## RULES

Fed. R. Civ. P. 24............................................................................................ *passim*

## REGULATIONS

28 C.F.R. § 0.20 ............................................................................................... 20

## LEGISLATIVE MATERIALS

68 Cong. Rec. 2983 (1927)................................................................................ 2

## OTHER AUTHORITIES

7A Wright & Miller,
  Federal Practice & Procedure § 1913 (1972)............................................................................... 19

USPS Pub. 52 § 431.4,
  https://pe.usps.com/text/pub52/pub52c4_009.htm ..................................................................... 2

**INTRODUCTION**

The pending motion concerns whether a group of states can intervene in a federal case over a federal criminal statute by asserting that the litigation outcome might at some point impact state resources and the enforcement of state laws. They cannot. The federal law at issue in this case is 18 U.S.C. § 1715, which prohibits the mailing of concealable firearms through the U.S. Postal Service. Plaintiffs contend that § 1715 violates the Second Amendment and the federal government agrees that the law violates the Second Amendment as to handguns and other constitutionally protected firearms.  New York, New Jersey, and Delaware ("the States") have moved to intervene to defend the constitutionality of the statute. The States claim that if § 1715 is found unconstitutional, they might someday face "pocketbook" and "sovereign" injuries resulting from the increased shipment of handguns into their states. But such indirect, speculative theories of harm fail to satisfy the requirements of Article III of the Constitution or Rule 24 of the Federal Rules of Civil Procedure.

First, the States seek to intervene and litigate the merits of this case alone—i.e., they seek different relief than any of the current parties. To do that, they need Article III standing, which they lack. The Supreme Court recently held that a state lacks standing based on indirect financial injuries resulting from a change in federal policy. And the Supreme Court also recently held that a litigant lacks standing when it diverts resources in response to federal policy. These precedents doom the States' claim to intervention, as the States' motion to intervene similarly asserts that a change in federal law might cause them to divert state resources to better enforce their state firearm laws.

Second, the States also lack a direct, legally protected interest in this case to intervene under Rule 24. Third Circuit precedent holds that a government intervenor lacks a sufficient

interest in litigation when it asserts merely an economic or incidental interest that does not directly impede or affect legally defined duties or responsibilities. Here, the States' theory that a judicial ruling in a different state about a federal criminal law might in the future impact how they allocate their state resources is exactly the type of indirect, economic interest that does not suffice.

In sum, this Court should deny the States' motion to intervene.

## BACKGROUND

### I.    Federal Firearm Laws

Congress enacted 18 U.S.C. § 1715 in 1927 to prohibit the mailing of concealable firearms through the U.S. Postal Service. *See* 68 Cong. Rec. 2983 (1927). Non-concealable firearms—like standard rifles and shotguns—are not prohibited from being mailed under § 1715. *See* USPS Pub. 52 § 431.4, https://pe.usps.com/text/pub52/pub52c4_009.htm. Later, Congress expanded beyond that prohibition by enacting 18 U.S.C. § 922, which broadly restricts interstate sales and transfers of all firearms, not just concealable ones. *See Barrett v. United States*, 423 U.S. 212, 218 (1976). For example, § 922(a)(3) prohibits "any person" (other than a licensed importer, manufacturer, dealer, or collector) from "transport[ing] into or receiv[ing] in the State where he resides . . . any firearm purchased or otherwise obtained by such person outside that State[.]" And § 922(a)(5) separately criminalizes "any person" (other than a licensed importer, manufacturer, dealer, or collector) from transferring, selling, trading, giving, transporting, or delivering "any firearm to any person . . . who the transferor knows or has reasonable cause to believe does not reside in . . . the State in which the transferor resides[.]" So, § 922(a) channels all interstate firearm transfers through federal firearm licensees, who are themselves separately prohibited from selling or delivering "any firearm to any person in any State where the purchase or possession by such person

2

of such firearm would be in violation of any State law . . . applicable to the place of sale[.]" 18 U.S.C. § 922(b)(2).

## II.    Procedural History

Plaintiffs Bonita Shreve, Gun Owners of America, and Gun Owners Foundation initiated this action.   Compl., ECF No. 1 ("Compl."). They claim that § 1715 and its implementing regulations violate the Second Amendment.   *Id.* ¶¶ 11–12. In December, Plaintiffs moved for summary judgment. ECF 24. On January 15, 2026, the Office of Legal Counsel ("OLC") published an opinion on the constitutionality of § 1715. *See* ECF 27-1 (*Constitutionality of 18 U.S.C. § 1715*, slip op., O.L.C. (Jan. 15, 2026), 2026 WL 184857) ("OLC Opinion"). In the opinion, OLC determined that § 1715 violates the Second Amendment as applied to the shipment of protected firearms. *Id.* OLC thus concluded "that the Department of Justice should cease prosecutions under the statute with respect to protected firearms." *Id.* Consistent with 28 U.S.C. § 530D, the Department of Justice informed Congress on January 16 that it will no longer prosecute violations of § 1715 with respect to constitutionally protected firearms and will be taking that position in ongoing litigation, including in this case. *See* Defs.' Intervention Ex. 1.[1]

On January 16, 2026, Defendants cross moved for summary judgment on jurisdictional grounds alone. *See* ECF 26–28. Defendants did not move for summary judgment on the merits, consistent with the OLC Opinion that binds the Executive Branch. On February 5, the States noticed an intent to intervene. ECF 31. Nearly a month later, on March 2, the States moved to intervene, arguing that they meet the standard for intervention as of right and permissive

---

[1]  The attached letters are dated January 15, 2026. But they were sent to Congress the next day on January 16, 2026.

3

intervention. *See generally* Br. in support of Movant States' Mot. to Intervene as Defs., ECF 46 ("Intervention Br.").

## LEGAL STANDARD

Federal Rule of Civil Procedure 24 permits two types of intervention: intervention as of right and permissive intervention. Rule 24(a)(2) provides that a court must permit intervention as of right when the movant "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Rule 24(b)(1)(B) provides that a court may permit intervention when the movant "has a claim or defense that shares with the main action a common question of law or fact."

## ARGUMENT

### I.     The States lack Article III standing to litigate the merits of the case.

The States must establish Article III standing, in addition to the Rule 24 requirements. The Supreme Court and the Third Circuit have determined that when a proposed intervenor "seeks additional relief beyond that which" the parties seek, the intervenor must demonstrate Article III standing. *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017); *Wayne Land & Min. Grp., LLC v. Delaware River Basin Comm'n*, 959 F.3d 569, 574 (3d Cir. 2020) (quoting same); *see also Pennsylvania v. President U.S. of Am.*, 888 F.3d 52 n.2 (3d Cir. 2018) (noting that an applicant seeking to intervene as a defendant did not need to establish Article III standing when they sought "the same relief as the federal government"). Indeed, "an intervenor's right to continue a suit in the absence of the party on whose side intervention was permitted is contingent upon a showing by the intervenor that he fulfills the requirements of [Article] III." *Diamond v. Charles,* 476 U.S. 54, 68 (1986). For example, in *Defenders of Wildlife v. Martin*, an intervenor moved in the district

4

court to dissolve an injunction. 2021 WL 5890661, at *3 (E.D. Wash. Dec. 13, 2021). Because the federal defendants did not join the motion, the court proceeded to determine whether the intervenor had Article III standing to pursue the motion alone. *Id.* at *3–4.

So too here. The States seek to litigate the merits of Plaintiffs' Second Amendment claim alone. The federal government is defending this case on jurisdictional grounds—not on the merits. As such, the States seek different relief based on a different legal theory than Defendants, namely a judgment in the States' favor *on the merits* of the Second Amendment claim. *See Washington v. FDA*, 108 F.4th 1163, 1173 (9th Cir. 2024) (requiring the proposed intervenor to establish Article III standing because of "the deep and obvious conflict between the [plaintiff's and proposed intervenor's] objectives" and because "claims aris[ing] under a different legal theory 'seeks different relief'"). The States thus seek to litigate this case differently and further than Defendants. To do that, the States must establish Article III standing, which they lack.

To establish Article III standing, the States must establish injury-in-fact, causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The States assert two injuries entitling them to intervene: a pocketbook injury and a sovereign injury. Both fail.

### A. The States will not suffer a cognizable "pocketbook" injury traceable to any outcome of this case.

The States do not assert that they have already suffered a pocketbook injury. Rather, they claim that they *might* someday in the future suffer a pocketbook injury from "increased state law enforcement costs and increased administrative costs and burden, since concealable firearms could now be mailed through USPS to individuals who are not legally authorized to receive." Intervention Br. at 14. But establishing standing based on a future injury cannot be built on "speculat[ion]," as the States are required to put forth evidence showing that their "threatened injury" is "certainly impending." *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013). Far

from the certainly impending threshold, the States' alleged future pocketbook injuries are exaggerated and noncognizable.

*First*, the States exaggerate the consequences of a judgment for Plaintiffs[2] and while doing so, misinterpret federal firearm laws. The States claim a speculative parade of horribles will befall them if § 1715 is found unconstitutional, including dramatic disruptions to their regulatory and law enforcement systems. Intervention Br. at 19–21. But for starters, although Plaintiffs seek universal relief, the maximum relief this Court can provide here is to the Plaintiffs, not to everyone in the country wanting to ship handguns. *See Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025). Even if this Court universally enjoined § 1715, other federal criminal statutes would still apply. Section 922(a) and (b) of Title 18 separately prohibit nearly all interstate transfers and sales of all firearms, except when through federal firearm licensees. Those subsections also prohibit federal firearm licensees from selling firearms to residents of other states who appear at their business premises, with a narrow exception for over-the-counter rifle and shotgun sales—but only when those sales comply with the laws of both the licensee's and purchaser's states. *See* 18 U.S.C. § 922(b)(2), (b)(3). In all circumstances, licensees are criminally prohibited from selling or transferring firearms in violation of state and applicable local law. *See* 18 U.S.C. § 922(a), (b).[3] So, federal law—independent of § 1715—already addresses the States' concern that interstate handgun transfers will no longer occur through licensed retailers (they still will). Intervention Br. at 16. And for the same reasons, federal law—independent of § 1715—already addresses the States' concern

---

[2]  To be clear, judgment should not issue for Plaintiffs, because they have neither standing nor a ripe dispute, as explained in Defendants' motion for summary judgment.

[3] The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) still enforces the statutory sections relevant to this case: 18 U.S.C. § 922(a)(3), (a)(5), (b)(2) and (b)(3).

that the U.S. Postal Service will become an easy means of circumventing state transfer restrictions (it still will not). *See* Intervention Br. at 17.

The States wrongly assert that "shipments made through USPS would not fall within" § 922. Intervention Br. at 10. If a Texas resident transferred his handgun to a New Jersey resident through the U.S. Postal Service, that would plainly violate § 922(a)(3). The only situations that § 1715 criminalizes that § 922 does not are intrastate mailing and individuals mailing to themselves handguns that they already lawfully acquired intrastate. The States make no showing that intrastate firearm shipments or individuals shipping already-lawfully-acquired firearms to themselves will disrupt their regulatory and law enforcement resources in the future. Nor could they. Intrastate transactions occur wholly within each State's territorial jurisdiction and existing regulatory authority. And the mailing of a firearm to oneself likewise does not create a concrete injury traceable to the outcome of this case since individuals are already permitted to travel with their firearms across state lines. *See* 18 U.S.C. § 926A. Nothing about the outcome of this case would change that.

The OLC opinion and this case only concern the constitutionality of § 1715, not other federal firearm prohibitions like § 922(a)(3), (a)(5), (b)(2) and (b)(3) that separately prohibit nearly every scenario that the States fear will befall them.[4] In sum, the claim that "the resulting gap in the federal regulations [from § 1715 being found unconstitutional] will spark a flood of concealable arms mailed into the Movant States" has little to no basis in reality. Intervention Br. at 22.

---

[4] It is also worth noting that because standard rifles and shotguns are not regulated by § 1715, the OLC opinion places handguns on equal terms with rifles and shotguns.

*Second*, the States' asserted injuries are noncognizable and contrary to precedent. They allege, through a complicated and attenuated chain of possible events, *see Purpura v. Christie*, 687 F. App'x 208, 210 (3d Cir. 2017) (rejecting theory of standing based on a "highly attenuated chain of possibilities"), that if § 1715 is found unconstitutional, it would "increase[] state law enforcement costs directly related to mailability of concealable firearms through USPS[.]" Intervention Br. at 21. But that alleged causal relationship is anything but "direct." *See El Paso Cnty. v. Trump*, 982 F.3d 332, 340–41 (5th Cir. 2020) (holding that "incidental and attenuated" economic harm flowing from the actions and inactions of the federal government to state and local governments cannot establish a cognizable injury).

Any alleged pocketbook injury would be purely incidental. The Supreme Court's decisions in *United States v. Texas*, 599 U.S. 670, 677 (2023) and *Florida v. Mellon*, 273 U.S. 12 (1927) establish that the incidental effects on state resources from a change in federal law or policy do not establish standing. In *Texas*, the Court concluded that Texas lacked standing based on allegations of indirect financial injuries from a federal immigration enforcement policy. 599 U.S. at 680–85. In so holding, the Court rejected Texas's argument that it had standing because, for example, the States might spend money on incarceration and social services for "noncitizens who should be (but are not being) arrested by the Federal Government." *Id.* at 674. And in *Mellon*, Florida sought to establish standing to challenge a federal inheritance tax by arguing that the tax would prompt the "withdrawal of property" from the State, diminishing its tax base. 273 U.S. at 18. The Court rejected that argument, explaining that Florida was required to show a "direct injury" and that any harm caused by the federal tax was "purely speculative and, at most, only remote and indirect." *Id.* These holdings equally apply here: just as Texas and Florida could not establish standing by claiming that state resources might be incidentally affected by a federal policy or law, the States

8

here cannot establish standing by claiming that state resources might be incidentally affected by a judicial decision on § 1715.

The States' contrary view would have far-reaching implications. Virtually all federal actions—from prosecuting crime to imposing taxes to immigration enforcement—have some incidental effects on state resources. If such incidental and indirect effects suffice for standing to intervene, every State could intervene when the federal government takes a position on a matter of federal law that the States do not like, because "in our system of dual federal and state sovereignty, federal policies frequently generate indirect effects on state revenues or state spending." *Texas*, 599 U.S. at 680 n.3. That would flout both Article III's and Rule 24's requirements and convert federal courts into "an open forum for the resolution of political or ideological disputes[.]" *United States v. Richardson*, 418 U.S. 166, 192 (1974) (Powell, J., concurring); *see also Texas*, 599 U.S. at 681 (emphasizing concerns that if the Court "green-lighted" Texas's suit, federal courts could expect "complaints in future years about alleged Executive Branch under-enforcement of any similarly worded laws—whether they be drug laws, gun laws, obstruction of justice laws, or the like").

Moreover, any alleged harm to the States is self-inflicted. The States here have no obligation to rely on federal postal service laws to help enforce state firearm laws. The States remain free to use their resources to enforce their laws apart from relying on § 1715. If they choose not to do so, any resulting change in resources is fairly traceable not to § 1715 being found unconstitutional, but instead to their own choices about how to structure their law enforcement priorities and resources. *See Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976) (per curiam) (concluding that fiscal injuries were self-inflicted "from decisions by their respective state legislatures"). And the States "cannot manufacture standing merely by inflicting harm on

9

themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416.

The States similarly cannot establish standing to intervene by recasting its ordinary law enforcement obligations as harm. The Supreme Court recently made clear that a litigant's decision to "divert[] its resources in response to a defendant's actions" does not establish Article III standing. *FDA v. Alliance for Hippocratic Med.,* 602 U.S. 367, 395 (2024). To hold otherwise would allow virtually every proposed intervenor to "manufacture its own standing" by "spend[ing] a single dollar" to influence any federal litigation in which it wishes to participate. *Id.* at 394–95. And the States cannot establish standing to intervene by claiming that they must enforce their own firearm laws better in the future if § 1715 is found unconstitutional; working incrementally harder at one's job is not an Article III injury. *See Coal. for Humane Immigrant Rts. v. U.S. Dep't of Homeland Sec.*, 780 F. Supp. 3d 79, 90 (D.D.C. 2025) (finding that "enhanced" efforts that are merely a "fulfillment" of an entity's mission and duties is not an Article III injury), *appeal filed*, No. 25-5152 (D.C. Cir. Apr. 28, 2025).

### B. The States will not suffer a cognizable "sovereign" injury traceable to any outcome of this case.

The States then pivot and claim that Plaintiffs' demanded relief may "jeopardize[]" their "sovereign interests in the integrity and effective enforcement of their state laws." Intervention Br. at 21. That theory of harm falters under scrutiny. Indeed, none of the cases the States invoke support their theory. The States first rely on *Cameron v. EMW Women's Surgical Center, P.S.C.*, 595 U.S. 267 (2022), where the Supreme Court addressed whether a state could be prevented from defending its *own* state statute in court. *Id.* at 277. And then they rely on *Harper v. Public Service Commission*, 396 F.3d 348, 351 (4th Cir. 2005), where a court addressed whether a federal court could interfere with a state proceeding. Finally, they rely on *Alfred L. Snapp & Son, Inc. v. Puerto*

10

*Rico*, 458 U.S. 592 (1982), where the Supreme Court addressed parens patriae standing.[5] All of those cases are a far cry from asserting a sovereign interest in ensuring federal law is interpreted in a way that might make it easier for a state to enforce its own laws. Unsurprisingly, the States cite no authority recognizing such an interest as cognizable under Article III or Rule 24.

Nothing about this lawsuit impairs or impedes the States from enforcing their own firearm laws. *See Cuccinelli v. Sebelius*, 656 F.3d 253, 269 (4th Cir. 2011) (holding that "only when a federal law interferes with a state's exercise of its sovereign 'power to create and enforce a legal code' does it inflict on the state the requisite injury-in-fact" (citation omitted)). Neither the outcome of this case nor the manner in which the federal government exercises its enforcement discretion will directly burden the States, *cf. Bowen v. Public Agencies*, 477 U.S. 41, 50 n.17 (1986), will commandeer the States' enforcement officials, *cf. New York v. United States*, 505 U.S. 144 (1992), or will threaten the States' sovereign territory, *cf. Massachusetts v. EPA*, 549 U.S. 497, 519 (2007). The States do not and cannot make a claim to standing on these bases. And the Supreme Court in *Texas* rejected the very type of harm the States claim here, holding that precedent, history, and tradition all show that States lack standing to ensure that the "Executive Branch makes more arrests or initiates more prosecutions." 599 U.S. at 677; *see also Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (finding that a third-party "lacks a judicially cognizable interest in the prosecution or nonprosecution of another"). The States do not have a "sovereign" Article III injury.

---

[5]  To the extent the States are attempting to assert a form of parens patriae standing, "[a] state does not have standing as parens patriae to bring an action against the Federal Government." *Haaland v. Brackeen*, 599 U.S. 255, 295 (2023)

### C.  Permitting the States to intervene will remedy none of their alleged harms.

In addition to failing to establish an Article III injury traceable to the outcome of this case, the States have also failed to establish a "a substantial likelihood that the requested relief will remedy the alleged injury in fact." *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 143 (3d Cir. 2009). Imagine the very best-case scenario for the States here: (1) that this Court permits them to intervene and defend § 1715 on the merits; and (2) the Court enters judgment in Defendants' favor on the merits. That best case scenario would do nothing to redress their claimed injuries, because the federal government is still bound by the published OLC Opinion and cannot enforce § 1715 to the extent it violates the Second Amendment. In other words, individuals can mail handguns without the federal government prosecuting them under § 1715 regardless of the outcome of this case.[6] The States thus cannot establish that the requested relief will remedy their alleged injuries.

With no Article III standing, the States cannot intervene to defend the merits of this case. This Court should deny the motion to intervene on this score alone. Yet, even if this Court determined that the States do not need to establish Article III standing, this Court should still deny the intervention motion as insufficient under Rule 24.

## II.    The States lack a right to intervene.

An applicant seeking to intervene as of right "must establish that: (1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter, by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." *Benjamin v. Dep't of*

---

[6]  Of course, individuals may be subject to penalties and prosecution under other federal firearm laws, like § 922, but that consideration is irrelevant for purposes of this case concerning only § 1715.

*Pub. Welfare*, 432 F. App'x 94, 97 (3d Cir. 2011). "Each of these requirements must be met to intervene as of right." *Mountain Top Condominium Assoc. v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir.1995) (citation omitted). In other words, a court must deny an intervention motion that fails to establish any one of the four intervention prongs. The States fail on at least prongs two and three.

### A.  The States lack a direct interest in the outcome of this case.

Not only do the States lack an Article III injury, they also lack a lower level of "interest" in the outcome of this case to justify intervention under Rule 24. Although Rule 24 does not detail what constitutes a sufficient interest, the Supreme Court has found that "what is obviously meant . . . is a significantly protectable interest." *Donaldson v. United States*, 400 U.S. 517, 531 (1971). "[A]n intervenor fails to show a sufficient interest when he seeks to intervene solely for ideological, economic, or precedential reasons; that would-be intervenor merely *prefers* one outcome to the other." *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015). A "sufficient interest in the litigation" is one "that is specific to [the intervenor], is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought." *Kleissler v. United States Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998). "[T]he polestar for evaluating a claim for intervention is always whether the proposed intervenor's interest is direct or remote." *Id.*

Here, the States' purported pocketbook and sovereign interests are insufficient under Rule 24(a).

**No cognizable pocketbook interest.** "In general, a mere economic interest in the outcome of the litigation is insufficient to support a motion to intervene." *Mountain Top*, 72 F.3d at 366. District courts in this circuit have repeatedly denied intervention motions based on a purely economic interest in litigation. *See Pennsylvania State Univ. v. U.S. Dept. of Health & Human*

13

*Serv.*, 142 F.R.D. 274, 275 (M.D. Pa. 1992) (denying motion to intervene where only interest asserted was a potential economic interest in the outcome of the case); *FTC v. Mercury Mktg. of Del., Inc.*, 2004 WL 2110686, at *2 (E.D. Pa. 2004) (holding that intervention motion failed where interest asserted was "merely economic") *Haymond v. Lundy*, 2002 WL 31149289, at *3 (E.D. Pa. 2002) (holding an interest insufficient to intervene where it was not only "clearly economic in nature," but also "contingent" upon happening of other events). This precedent alone forecloses the States' intervention based on a pocketbook (i.e., economic) interest in this case.

Even if the Court considered the merits of the States' asserted pocketbook interest—despite precedent foreclosing it—the alleged interest is too remote, speculative, and contingent on future events to suffice.

Third Circuit precedent helps delineate the line between a direct, legally protected interest, and the kind of attenuated interest that cannot support intervention. On the one hand, the Third Circuit has recognized a sufficiently direct interest to intervene when the outcome of litigation could directly interfere with or affect a government official's legally defined duties or authorities. *See Harris v. Pernsley*, 820 F.2d 592, 602 (3d Cir. 1987). For example, the Third Circuit noted situations where the U.S. Attorney General tasked with enforcing and interpreting *federal immigration* law was permitted to intervene as of right in an action making a *federal immigration* determination on citizenship, *id.* (citing *Smith v. Pangilinan,* 651 F.2d 1320 (9th Cir. 1981), a state examiner tasked with implementing *civil service examinations* was permitted to intervene as of right in an action seeking changes to *civil service examinations*, *id.* (citing *Hines v. D'Artois*, 531 F.2d 726, 737 (5th Cir. 1976)), and a state banking commissioner tasked with enforcing *state banking law* was permitted to intervene as of right in federal litigation that incorporated and

14

interpreted *state banking law*, *id.* at 602-03 (citing *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)).

On the other hand, where a proposed intervenor asserts only a "general" or "incidental" interest in the consequences of the litigation, the Third Circuit has found that interest insufficient. *See Harris*, 820 F.2d at 600–03. In *Harris*, for example, a local district attorney sought to intervene as of right in litigation challenging a consent decree between a city and prisoners that limited the city's prison population. *Id.* at 594, 600–03. The Third Circuit affirmed denial of intervention. *Id.* Recognizing that there could be incidental "practical consequences" for the district attorney, the court still found his interests "of a general and indefinite character." *Id.* at 601–02. The court explained that the consent decree would not alter the district attorney's law-enforcement duties, would not have a stare decisis effect on his work, and would not affect his contractual rights. *Id.* The court also emphasized that denying intervention "respect[ed] the boundaries . . . [the state] ha[d] chosen to draw as to the responsibilities of its public officials," finding that the district attorney's responsibilities and interests did not include "policing the entire criminal justice system." *Id.* at 602.

With this precedent in mind, the States' asserted pocketbook interest falls on the remote side of the line. The States contend that a judicial interpretation of a federal criminal statute may—in some unspecified way and at some unspecified time—affect their law enforcement resources and administration of their state firearm laws. But that theory rests on a chain of uncertain contingencies: how federal law is interpreted by a Pennsylvania federal district court, how private actors might respond to that interpretation, and how those responses might in turn influence the States' resources at some point in the future. An interest that depends on so many speculative, intervening steps is the opposite of direct. *See Clapper*, 568 U.S. at 410. Nothing

15

about the outcome of this case will alter the States' ability to enforce their own laws, will have a stare decisis effect, or will affect preexisting rights.

Indeed, the asserted interest by the district attorney in *Harris* was more direct than the one the States advance here. There, a local prosecutor sought to intervene in litigation concerning a local prison—a setting that more closely touched on his law enforcement responsibilities. By contrast, the States here claim that a judicial ruling in a different state about a federal criminal law might impact how they allocate their resources in enforcing state firearm laws. If the asserted interest in *Harris* was insufficient, the States' far more remote interest is insufficient.

The States primarily rely on *California v. ATF*, 718 F. Supp. 3d 1060 (N.D. Cal. 2024), *appeal docketed*, No. 24-2701 (9th Cir. Apr. 29, 2024), where a California district court accepted a similarly attenuated chain of contingencies as sufficient for Article III standing. That decision was wrongly decided and is on appeal. And in any event, that decision is unpersuasive. For starters, it conflicts with a recent decision from a federal district court in Alabama that rejected the same type of interest advanced by the States here. *See* Order, *Butler v. Bondi*, Case No. 1:24-cv-975, ECF 94 ( N.D. Ala. Sep. 22, 2025). In that case, states (including New Jersey and Delaware) sought to intervene as of right in a federal case challenging an ATF rule. *Id.* They claimed that they might face increased law enforcement costs in the future if the ATF rule was invalidated, thus asserting a pocketbook interest in the outcome of the case. *Id.* The district court rejected that theory, holding that the asserted interest was "speculative," "purely economic," and "incidental." *Id.* (finding that the States lacked a "legally protectable interest in lowering costs related to crimes committed by those prohibited from possessing firearms"). Neither the California nor the Alabama district court decision is binding here. But the Alabama decision carries more persuasive weight, because it

16

aligns with the reasoning of the Third Circuit's decision in *Harris* that found a similarly "incidental" and "general" interest insufficient.

Finally, permitting the States to intervene here would also contravene federalism principles. *Cf. Lee v. Kelley*, 99 F.R.D. 340, 343 (D.D.C. 1983) (rejecting legislator's motion to intervene in part because of "separation of powers" concerns). This case involves two quintessentially federal domains: the enforcement and defense of a federal criminal statute, *see United States v. Associated Milk Producers, Inc.*, 534 F.2d 113, 117 (8th Cir. 1976), and the regulation of the postal system, *see Pullmans Palace Car Co. v. Pennsylvania*, 141 U.S. 18, 31 (1891) ("[S]urely a state cannot interfere with the officers of the United States in the performance of their duties, whether acting under the judicial, military, *postal*, or revenue departments. They are entirely free from state control." (emphasis added)); *Regents of Univ. of California v. Pub. Emp. Rels. Bd.*, 485 U.S. 589, 594 (1988) (recognizing that a federal postal monopoly "has prevailed in this country since the Articles of Confederation"). Thus, by rejecting the States' intervention motion, this Court would be "respect[ing] the boundaries" our system has "draw[n] as to the responsibilities" between state and federal officials; the States' responsibilities and interests do not include "policing" federal firearm litigation around the country. *See Harris*, 820 F.2d at 600–03.

**No cognizable sovereign interest.** The States' alleged "sovereign" interest in enforcement of § 1715 are insufficient to justify intervention for the same reasons outlined in Part I.B above on standing. *See Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989) (noting that "standing cases . . . are relevant to help define the type of interest that the intervenor must assert"). Nothing about this lawsuit impairs or impedes the States from enforcing their own firearm laws. The States are free to use whatever lawful tools they have to enforce their own laws; the outcome of this case

17

will not change that. The States do not have a legally cognizable sovereign interest in ensuring that federal law is interpreted in a way that makes it easier for them to enforce their laws.

### B. The States' alleged interests will not be affected by this case.

Once the proposed intervenors have established that they claim a sufficient legal interest in the underlying dispute (which the States have not), the proposed intervenors "must also show that this claim is in jeopardy in the lawsuit." *Brody v. Spang*, 957 F.2d 1108, 1122 (3d Cir. 1992). "Under this element of the test, the [proposed intervenors] must demonstrate that their legal interests 'may be affected or impaired, as a practical matter by the disposition of the action.'" *Id.* (citation omitted). "In making this determination [the court is] required to assess 'the practical consequences of the litigation[.]" *Id.* "It is not sufficient that the claim be incidentally affected; rather, there must be 'a tangible threat' to the applicant's legal interest." *Id.* at 1123 (quoting *Harris*, 820 F.2d at 601).

Here, for the same reasons that they cannot establish the redressability prong of Article III, the States cannot establish that their alleged interests will be affected by this case. Regardless of the outcome of this case, the federal government is still bound by the published, publicly available OLC opinion and thus cannot enforce § 1715 to the extent it violates the Second Amendment. So, this case's outcome will have little to no practical consequences on whether individuals can or will mail firearms through the U.S. Postal Service.

### III.    The States lack grounds for permissive intervention.

In the alternative, the States seek permissive intervention. Permissive intervention may be granted "when an applicant's claim or defense and the main action have a question of law or fact in common." *See* Fed. R. Civ. P. 24(b)(1)(B). A court's decision to grant permissive intervention is "highly discretionary." *United States v. Virgin Islands*, 748 F.3d 514, 519 (3d Cir. 2014) (citation

18

omitted); *see also Halderman v. Pennhurst State Sch. & Hosp.*, 97 F.R.D. 522, 525 (E.D. Pa. 1983) (quoting 7A Wright & Miller, Federal Practice & Procedure § 1913, at 511 (1972): "[E]ven though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied, the court may refuse to allow intervention.").

The States' request to permissibly intervene should be denied for the same reasons that the States cannot intervene as of right. *See Brody,* 957 F.2d at 1124 ("[I]f intervention as of right is not available, the same reasoning would indicate that it would not be an abuse of discretion to deny permissive intervention as well."). The States' alleged "pocketbook" and "sovereign" interests are too attenuated and thus have little, if anything, to do with the issues in this case. *See Palladino v. Corbett*, 2014 WL 830046, at *6 (E.D. Pa. Mar. 4, 2014) ("The generalized and attenuated harm suggested by the movants . . . does not persuade the Court that permissive intervention is warranted here."); *American Deposit Corp. v. Schacht*, 1995 WL 103723, at *2 (N.D. Ill. Mar. 6, 1995) (denying permissive intervention because the "remote" economic interest asserted had "little, if anything, to do with the concrete issues in th[e] case"). And the States add nothing to the litigation that they could not add as amicus curiae. Instead of becoming parties, the States and other entities that may be incidentally affected by litigation over a federal action may inform the courts of their interests through the filing of a timely amicus brief.

Additionally, permissive intervention should be denied because intervention would prejudice Defendants by interfering with the Department of Justice's control of federal litigation and enforcement of federal criminal law. The Attorney General—not state governments—is empowered to control "litigation in which the United States, an agency, or officer thereof is a party." 28 U.S.C. § 516; *see Associated Milk Producers, Inc.*, 534 F.2d at 117 ("It is axiomatic that the Attorney General must retain considerable discretion in controlling government litigation

19

and in determining what is in the public interest."). Further, the Solicitor General of the United States is charged with "[d]etermining whether, and to what extent, appeals will be taken by the Government." 28 C.F.R. § 0.20(b). In a case like this one challenging the constitutionality of a federal criminal statute, the federal government should control the course of the litigation and any future appeals, not state attorneys general. Granting intervention would undermine these important federal interests.

## **CONCLUSION**

For these reasons, the Court should deny the States' motion to intervene.

Dated: March 23, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANDREW I. WARDEN
Assistant Branch Director
Federal Programs Branch

*/s/ Samuel S. Holt*
SAMUEL S. HOLT (CO Bar No. 59613)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Telephone: (202) 674-9761
Fax: (202) 616-8470
Samuel.Holt2@usdoj.gov

*Counsel for Defendants*

20