# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BONITA SHREVE, *et al.*,

      *Plaintiffs,*

      v.

U.S. POSTAL SERVICE, *et al.*,

      *Defendants.*

Civil Action No. 3:25-cv-214

## REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

ADDITIONAL BACKGROUND.................................................................................... 2

ARGUMENT ................................................................................................................... 3

    I.      The Court lacks jurisdiction over Plaintiffs' pre-enforcement challenge. .............. 3

            A.      The Court lacks jurisdiction over Plaintiffs' pre-enforcement challenge to § 1715 since neither Shreve nor any of the associational Plaintiffs' members face a credible and substantial threat of prosecution. ........................................................................ 6

                        1.      Current enforcement indicators (e.g., the government disavowing prosecution of the statute re shipment of handguns) show no credible and substantial threat of prosecution. ................................................................................ 6

                        2.      Past enforcement indicators (e.g., no prosecutions of § 1715 in Pennsylvania in at least a decade) show no credible and substantial threat of prosecution. .................................................... 10

            B.      The Court lacks jurisdiction over Plaintiffs' pre-enforcement challenge to the postal regulations since USPS is changing its regulations to conform with the OLC Opinion. ....................................... 14

            C.      GOF lacks standing for additional reasons. ............................................ 18

    II.      Plaintiffs seek improper remedies........................................................................ 19

CONCLUSION................................................................................................................ 20

## TABLE OF AUTHORITIES

**CASES**

*Am. Petroleum Inst. v. EPA*,
   683 F.3d 382 (D.C. Cir. 2012).......................................................................... 15, 16

*Amenuvor v. Mazurkiewicz*,
   494 F. App'x 198 (3d Cir. 2012) ............................................................................ 16

*Arizona v. City & Cnty. of San Francisco*,
   596 U.S. 763 (2022).................................................................................................. 15

*Ass'n of Am. Physicians & Surgeons v. FDA*,
   13 F.4th 531 (6th Cir. 2021) .................................................................................... 20

*Blunt v. Lower Merion Sch. Dist.*,
   767 F.3d 247 (3d Cir. 2014) ................................................................................. 4, 18

*Bronson v. Swensen*,
   500 F.3d 1099 (10th Cir. 2007)............................................................................... 12

*Camp Hill Borough Republican Ass'n v. Borough of Camp Hill*,
   665 F. Supp. 3d 617 (M.D. Pa. 2023), *aff'd*, 101 F.4th 266 (3d Cir. 2024)............................. 18

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013).................................................................................................. 10

*D.L.S. v. Utah*,
   374 F.3d 971 (10th Cir. 2004)............................................................................. 5, 14

*Fla. Decides Healthcare, Inc. v. Byrd*,
   790 F. Supp. 3d 1335 (N.D. Fla. 2025).................................................................. 20

*Geneva Coll. v. Sebelius*,
   929 F. Supp. 2d 402 (W.D. Pa. 2013) ................................................................. 6, 16

*Greenberg v. Lehocky*,
   81 F.4th 376 (3d Cir. 2023).......................................................................................7

*Grp. Against Smog & Pollution, Inc. v. Shenango Inc.*,
   810 F.3d 116 (3d Cir. 2016) .................................................................................... 16

*Harmon v. City of Kansas City*,
   197 F.3d 321 (8th Cir. 1999).....................................................................................5

*Hunt v. Wash. State Apple Advert. Comm'n*,
   432 U.S. 333 (1977) ................................................................................................ 18

*Int'l Union, UAW. v. NLRB.*,
   459 F.2d 1329 (D.C. Cir. 1972) ............................................................................... 14

*Jamal v. Kane*,
   96 F. Supp. 3d 447 (M.D. Pa. 2015) ................................................................. 5, 7, 8

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) .................................................................................................. 4

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) ................................................................................................ 18

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) .................................................................................................. 6

*Nat. Res. Def. Council, Inc. v. U. S. Nuclear Regul. Comm'n*,
   680 F.2d 810 (D.C. Cir. 1982) ................................................................................ 16

*Nat'l Ass'n of Home Health Agencies v. Schweiker*,
   690 F.2d 932 (D.C. Cir. 1982) ................................................................................ 17

*Nat'l Shooting Sports Found. v. Att'y Gen. of New Jersey*,
   80 F.4th 215 (3d Cir. 2023) ............................................................................... *passim*

*New Jersey Physicians, Inc. v. President of U.S.*,
   653 F.3d 234 (3d Cir. 2011) ..................................................................................... 4

*Pub. Citizen v. Burke*,
   655 F. Supp. 318 (D.D.C. 1987), *aff'd*, 843 F.2d 1473 (D.C. Cir. 1988) .................. 9

*Reno v. Catholic Soc. Servs., Inc.*,
   509 U.S. 43 (1993) ............................................................................................ 15, 16

*Salvation Army v. Dep't of Cmty. Affs.*,
   919 F.2d 183 (3d Cir. 1990) ............................................................................ 5, 7, 10

*Schmidt v. Lessard*,
   414 U.S. 473 (1974) ................................................................................................ 19

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) .................................................................................................... 5

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ............................................................................................... 4

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ............................................................................................... 3

*Trump v. CASA, Inc.*,
   606 U.S. 831 (2025) ......................................................................................... 19, 20

*Trump v. New York*,
   592 U.S. 125 (2020) ............................................................................................... 3

*Whitman v. Soc. Sec. Admin.*,
   No. 1:24-CV-1376-PTG-WEF, 2025 WL 1357428 (E.D. Va. Apr. 1, 2025), *report and
   recommendation adopted*, 2025 WL 1699346 (E.D. Va. June 17, 2025) ................................. 19

## STATUTES

5 U.S.C. § 553 ............................................................................................................. 2

18 U.S.C. § 922 .................................................................................................... 13, 15

18 U.S.C. § 1715 ................................................................................................. *passim*

28 U.S.C. § 530D ....................................................................................................... 2

39 U.S.C. § 3001 .................................................................................................... 2, 15

## RULES

Fed. R. Civ. P. 17 ..................................................................................................... 19

Fed. R. Civ. P. 56 ..................................................................................................... 18

## ADMINISTRATIVE AND EXECUTIVE MATERIALS

39 C.F.R. § 211.2 ....................................................................................................... 3

Revised Mailing Standards for Firearms,
   91 Fed. Reg. 16601 (April 2, 2026) ......................................................................... 3

## OTHER AUTHORITIES

Samuel L. Bray, *Multiple Chancellors: Reforming the National Injunction*,
   131 Harv. L. Rev. 417 (2017) ................................................................................ 20

USPS Pub. 52 § 43,
https://pe.usps.com/text/pub52/pub52c4_009.htm ....................................................................... 3

## INTRODUCTION

The Department of Justice has disavowed prosecution of 18 U.S.C. § 1715 as to the shipment of constitutionally protected firearms through the U.S. Postal Service. It informed Congress that it was no longer enforcing the statute. It informed all federal prosecutors that they may no longer enforce the statute as to the shipment of constitutionally protected firearms. And most recently, the U.S. Postal Service proposed amended regulations that would permit the mailing of lawful firearms, including pistols, revolvers, shotguns, and rifles. This formal, government-wide disavowal of enforcement makes clear that no live case or controversy remains.

Plaintiffs attempt to manufacture a case or controversy by pointing to past prosecutions in other jurisdictions under different circumstances. But even setting aside the factual dissimilarities, those past prosecutions change nothing since they no longer reflect current enforcement policy in light of the government's disavowal. There is no jurisdiction to review and enjoin a criminal statute that the government is not enforcing.

Plaintiffs fallback on their challenge to the related postal regulations, citing recent examples that the U.S. Postal Service has not yet permitted the mailing of handguns. But the U.S. Postal Service is in the process of amending its regulations to allow precisely that conduct. The Court need not entangle itself in a dispute that is imminently becoming moot. The Court should allow the government to amend its regulations through the required statutory notice and comment process under the Administrative Procedure Act, not disrupt that process by issuing an unnecessary injunction.

In short, Plaintiffs lack standing, their pre-enforcement challenge is unripe, and this Court should dismiss this case for lack of jurisdiction.

1

## ADDITIONAL BACKGROUND

Plaintiffs Shreve, Gun Owners of America (GOA), and Gun Owners Foundation (GOF) assert that 18 U.S.C. § 1715 and the implementing postal regulations violate the Second Amendment. Compl. for Declaratory & Injunctive Relief ¶¶ 87–92, ECF 1 ("Compl."). On January 15, 2026, the Office of Legal Counsel ("OLC") published an opinion determining that § 1715 violates the Second Amendment as applied to the shipment of protected firearms. *See* Defs.' Ex. 1, ECF 27-1 (*Constitutionality of 18 U.S.C. § 1715*, 50 Op. O.L.C. (Jan. 15, 2026) (slip op.), 2026 WL 184857) ("OLC Opinion"). OLC thus concluded "that the Department of Justice should cease prosecutions under the statute with respect to protected firearms." *Id.* at *1.

The federal government promptly moved to implement the OLC Opinion. Consistent with 28 U.S.C. § 530D, the Department of Justice informed Congress on January 16 that it will no longer prosecute violations of § 1715 with respect to constitutionally protected firearms. *See* Defs.' Intervention Ex. 1, ECF 64-1.[1] On January 26, 2026, the Executive Office for United States Attorneys sent to all United States Attorneys, First Assistant United States Attorneys, and appellate and criminal chiefs a memorandum instructing them that "the Department may not, consistent with the Constitution, enforce § 1715 with respect to constitutionally protected firearms." *See* Defs.' Ex. 2. After the OLC Opinion, the U.S. Postal Service "worked in consultation with OLC" in developing and proposing revised regulations consistent with the OLC Opinion. *See* Defs.' Ex. 3. Under the Administrative Procedure Act (APA) and postal law, the U.S. Postal Service must revise its regulations through notice and comment. *See* 5 U.S.C. § 553; 39 U.S.C. § 3001(m). Consistent with this required legal process, the U.S. Postal Service on April 2, 2026, published in the Federal

---

[1] The letters are dated January 15, 2026. But they were sent to Congress the next day on January 16, 2026.

Register a notice of proposed rulemaking. *See* Defs.' Ex. 3 (*Revised Mailing Standards for Firearms*, 91 Fed. Reg. 16601 (proposed April 2, 2026) (to be codified at 39 C.F.R. Parts 111, 211)). The proposed rule would revise postal regulations to make "[l]awful firearms, including pistols, revolvers, shotguns, and rifles . . . mailable." *See* Defs.' Ex. 3. at § 431.3.

## ARGUMENT

### I.    The Court lacks jurisdiction over Plaintiffs' pre-enforcement challenge.

Article III jurisdiction "is not dispensed in gross," meaning that the justiciability of Plaintiffs' claims must be demonstrated "separately for each form of relief sought." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431, 436 (2021) (citation omitted). Plaintiffs challenge and seek to enjoin two distinct laws: (1) § 1715 under which the Department of Justice brings criminal prosecutions; and (2) regulations under which the U.S. Postal Service forbids the mailing of firearms, *see* USPS Pub. 52 § 43, https://pe.usps.com/text/pub52/pub52c4_009.htm; 39 C.F.R. § 211.2 (incorporating by reference the Postal Service Manuals). Plaintiffs thus must separately show that the Court has jurisdiction to review and enjoin the criminal statute and the related regulations. Defendants analyze jurisdiction separately for § 1715 and the regulations.

Article III requires Shreve, GOA, and GOF to establish that they have standing and that their case is ripe—two justiciability requirements that "often boil down to the same question." *Nat'l Shooting Sports Found. v. Att'y Gen. of New Jersey*, 80 F.4th 215, 218–19 (3d Cir. 2023) (citation omitted). For Shreve to establish standing, she must show that she has an injury that is "certainly impending," *see id.* at 218, and "that is concrete, particularized, and imminent rather than conjectural or hypothetical," *Trump v. New York*, 592 U.S. 125, 131 (2020).  Similarly, to establish a ripe case, Shreve must show that she has not brought a premature case that depends on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Nat'l*

3

*Shooting Sports Found.*, 80 F.4th at 219 (citation omitted). In sum, "[s]tanding and ripeness demand certainty and immediacy." *Id.* In applying the ripeness and standing inquiry to pre-enforcement challenges, the Third Circuit requires Shreve to establish, among other things, that she faces a credible and substantial threat of prosecution. *See id.* For GOA and GOF to establish associational standing, they must establish, among other things, that at least one of their identified members has a justiciable case to sue on his or her own behalf. *See New Jersey Physicians, Inc. v. President of U.S.*, 653 F.3d 234, 241 (3d Cir. 2011).

Plaintiffs' most recent brief advances several incorrect legal standards that should be corrected at the outset. *See* Pls.' Combined Reply & Opp'n, ECF 53 ("Pls.' Opp'n").

*First*, Plaintiffs claim that GOA and GOF "need not even identify its members by name to demonstrate [their] standing." Pls.' Opp'n at 11 (ECF pagination used throughout). But the Third Circuit has repeatedly made clear that "[i]n order to establish associational standing . . . an organization must 'make specific allegations establishing that at least one *identified* member ha[s] suffered or would suffer harm.'" *New Jersey Physicians, Inc*, 653 F.3d at 241 (emphasis added) (quoting *Summers v. Earth Island Inst.,* 555 U.S. 488 (2009)); *see Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 279–80 (3d Cir. 2014) (same).

*Second*, in seeing the weakness of their justiciability arguments, Plaintiffs improperly attempt to shift the burden of proof onto Defendants. *See* Pls.' Opp'n at 12–16 & n.8. Plaintiffs—not Defendants—bear the burden of establishing the Court's jurisdiction because a federal court must start with the presumption that it lacks jurisdiction until Plaintiffs affirmatively prove otherwise. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Nat'l Shooting Sports Found.*, 80 F.4th at 219 (finding that a pre-enforcement challenge is "the exception rather than the rule"). Yet, even if Defendants had the burden of proof (which they do not),

4

Defendants have in fact proven that neither Shreve nor any of Plaintiffs' members face a credible threat of prosecution since Defendants have disavowed prosecution of the statute as to the shipment of constitutionally protected firearms like handguns.

*Third*, Plaintiffs claim that because standing is determined at the filing of the complaint, Defendants' disavowal of prosecution does not affect Plaintiffs' original standing to sue. Pls.' Opp'n at 25. Again, Plaintiffs ignore binding Third Circuit precedent that holds the opposite. In *National Shooting Sports Foundation*, the Third Circuit determined that the plaintiff failed to establish a credible and substantial threat of prosecution in part because the state attorney general disavowed prosecution *after* suit was filed. 80 F.4th at 218–21 (citing oral argument transcript and legal brief). And in *Salvation Army v. Department of Community Affairs*, 919 F.2d 183, 190–93 (3d Cir. 1990), the Third Circuit determined that the plaintiff did not have a justiciable case as to certain statutory provisions because the government disavowed enforcement of those provisions *after* suit was filed. *See also D.L.S. v. Utah*, 374 F.3d 971, 974 (10th Cir. 2004) (finding no credible threat of prosecution in part because the county prosecutor disavowed prosecution *after* suit was filed); *Harmon v. City of Kansas City*, 197 F.3d 321, 327–28 (8th Cir. 1999) (plaintiffs lost standing to seek an injunction when city *after* suit was filed conceded all of their activities were constitutionally protected and were not prohibited by the ordinance); *Jamal v. Kane*, 96 F. Supp. 3d 447, 454–55 (M.D. Pa. 2015) (finding no standing based on disavowal of prosecution in a legal brief *after* suit was filed); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1998) (holding that there is no "present case or controversy regarding injunctive relief . . . if unaccompanied by any *continuing*, *present* adverse effects" (emphases added)). The Third Circuit has also held that pre-enforcement challenges raise interwoven ripeness and standing problems. *See Nat'l Shooting Sports Found.*, 80 F.4th at 219. And "ripeness may consider events which have occurred after the

5

filing of the complaint." *Geneva Coll. v. Sebelius*, 929 F. Supp. 2d 402, 423 (W.D. Pa. 2013), on reconsideration in part (May 8, 2013).

In applying the proper legal standards, this Court should deny Plaintiffs' motion for summary judgment and dismiss Plaintiffs' Second Amendment claim for lack of jurisdiction.

**A. The Court lacks jurisdiction over Plaintiffs' pre-enforcement challenge to § 1715 since neither Shreve nor any of the associational Plaintiffs' members face a credible and substantial threat of prosecution.**

To bring a pre-enforcement challenge, Plaintiffs must establish that Shreve or another GOF or GOA member "(1) intend[s] to take action that is (2) arguably affected with a constitutional interest but is (3) arguably forbidden by the Law, and (4) the threat of enforcement against [him or her] is substantial . . . [and] credible." [2] *Nat'l Shooting Sports Found.*, 80 F.4th at 219–20 (internal quotation marks omitted). At the summary judgment stage, Plaintiffs must support their invocation of jurisdiction through "specific facts" in the record. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). When determining if a plaintiff faces a credible and substantial threat of prosecution, the Third Circuit directs courts to consider current and past enforcement indicators. *See Nat'l Shooting Sports Found.*, 80 F.4th at 220. Those indicators show no credible threat of prosecution.

1. Current enforcement indicators (e.g., the government disavowing prosecution of the statute re shipment of handguns) show no credible and substantial threat of prosecution.

The federal government is not criminally enforcing § 1715 as to the shipment of handguns protected by the Second Amendment. That alone should end Plaintiffs' pre-enforcement challenge to § 1715 since that is what Plaintiffs and their members say they want to do. As explained in

---

[2] In their opening brief, Defendants contested prong two because Plaintiffs had failed to put forth admissible evidence establishing that Zimmerman could legally own a firearm. Plaintiffs' pages-long argument about a daughter generally having sufficient personal knowledge about her father's status as a law-abiding citizen is irrelevant since Plaintiffs have now furnished a proper declaration from Zimmerman. *See* ECF 54-1. Defendants thus only contest prong four of the pre-enforcement standard, because Plaintiffs cannot establish a credible and substantial threat of prosecution.

Defendants' opening brief, courts in the Third Circuit have repeatedly found pre-enforcement challenges not justiciable where the government expressly disavows prosecuting the plaintiffs' intended future conduct. *See, e.g.*, *Nat'l Shooting Sports Found.*, 80 F.4th at 219–20; *Jamal*, 96 F. Supp. 3d at 454; *Greenberg v. Lehocky*, 81 F.4th 376, 385–86 (3d Cir. 2023). In *Salvation Army*, the plaintiff received a "Notice of Violation and Order of the Commissioner," notifying the plaintiff that it was in violation of a state statute. 919 F.2d at 190. The plaintiff challenged the legality of the statute in federal district court, and during the litigation, the state government provided to plaintiff "an express assurance that there will be no enforcement against [the plaintiff]" of certain statutory provisions. *Id.* at 190–93. Despite the plaintiff receiving a "Notice of Violation," the Third Circuit nonetheless held that it "decline[d] to provide an advisory opinion" when the record reflected an "express assurance" "that the state will not enforce various statutory provisions against [the plaintiff]," which "suffice[d] to remove those provisions from the scope of the current controversy." *Id.* at 192–93.

The federal government here has formally disavowed prosecuting § 1715 as to anyone— not just Plaintiffs—shipping constitutionally protected firearms like handguns. In its published opinion, OLC determined that because § 1715 violates the Second Amendment as applied to the shipment of protected firearms, "the Department of Justice should cease prosecutions under the statute with respect to protected firearms." OLC Opinion at *1. Contrary to Plaintiffs' unsupported claim that "*literally no one* in the federal government got [the OLC] memo," Pls.' Opp'n at 18 (emphasis in original), the Department of Justice promptly implemented the OLC Opinion. The Department of Justice informed Congress on January 16 that it will no longer prosecute violations of § 1715 with respect to constitutionally protected firearms, *see* Defs.' Intervention Ex. 1, and the Executive Office for United States Attorneys informed senior officials in every U.S. Attorney's

7

office around the country that "the Department may not, consistent with the Constitution, enforce § 1715 with respect to constitutionally protected firearms," *see* Defs.' Ex. 2. This formal, department-wide disavowal of prosecution—through a binding OLC opinion, formal communication to Congress, and formal communication to federal prosecutors—is much more definitive and assuring than the government disavowing enforcement in oral argument or through a legal brief, both of which were sufficient in this circuit to eliminate any imminent threat of injury. *See Nat'l Shooting Sports Found.*, 80 F.4th at 218–21 (citing oral argument transcript and legal brief for disavowal of prosecution); *Jamal*, 96 F. Supp. 3d at 454–55 (disavowing enforcement in a legal brief). Neither Shreve nor any of the associational Plaintiffs' members face an imminent and concrete threat of prosecution under § 1715.

In response, Plaintiffs make a number of confusing, self-defeating, and speculative arguments that do not help them establish a present case or controversy.

*First,* Plaintiffs wrongly claim that a recent Puerto Rico prosecution shows that the federal government is not complying with the OLC Opinion. Pls.' Opp'n at 18 (citing *United States v. Perez-Rosado*, No. 3:25-cr-00246-ADC-2 (D.P.R. Feb. 4, 2026)). Far from showing disregard for the OLC Opinion, that case demonstrates the federal government's adherence and implementation of it. On February 4, 2026, the federal government in that prosecution moved to dismiss all § 1715 counts based on "the Department of Justice's directive not to enforce § 1715 with respect to constitutionally protected firearms," acknowledging that they received such guidance on January 26, 2026. *See* Defs.' Ex. 4. The court then granted the motion to dismiss. *See United States v. Perez-Rosado*, No. 3:25-cr-00246-ADC-2, ECF 48. That case confirms—not refutes—that the Department of Justice has implemented and adopted the OLC Opinion as binding and is no longer pursuing prosecutions under § 1715 with respect to constitutionally protected firearms.

*Second*, Plaintiffs' arguments about the OLC opinion are internally inconsistent and legally flawed. In one breath, they assert that the opinion does "not even bind DOJ itself," Pls.' Opp'n at 25; in the next, they then acknowledge that an OLC opinion "is binding as a matter of law on those who request it[,]" Pls.' Opp'n at 27 (quoting *Pub. Citizen v. Burke*, 655 F. Supp. 318, 321–22 (D.D.C. 1987) *aff'd*, 843 F.2d 1473 (D.C. Cir. 1988)). The Department of Justice requested the opinion, as Plaintiffs acknowledge, and is therefore bound by it, even under Plaintiffs' understanding of OLC opinions. *See* Defs.' Ex. 1, ECF 27-1. Only the Department of Justice can prosecute § 1715, and the Department of Justice has expressly disavowed prosecuting the shipment of constitutionally protected firearms, which undoubtedly includes the shipment of Shreve's, Gillam's, and Valdes's lawful handguns. *See* Decl. of Bonita Shreve ("Shreve Decl."), ¶¶ 5–6, ECF 25-1; Decl. of William Gillam ("Gillam Decl."), ¶ 5, ECF 54-1; Decl. of Luis Valdes ("Valdes Decl.") ¶ 8, ECF 54-1. In any event, Plaintiffs' broader concerns about the OLC Opinion are beside the point: the Department of Justice has adopted the OLC Opinion and is following it, as shown through its formal communications to Congress and to its federal prosecutors. *See* Defs.' Exs. 2–4. That is precisely what Plaintiffs claim is required. *See* Pls.' Opp'n at 26 (asserting that an OLC opinion qualifies as "the working law of an agency only if the agency has adopted the opinion as its own"). Without any threat of prosecution, Plaintiffs cannot establish a present case or controversy for injunctive relief as to § 1715.

Plaintiffs then pivot to speculation about the OLC Opinion, arguing that the case remains live because a future administration might someday withdraw the OLC Opinion. Pls.' Opp'n at 27–29 & n.21. That theory rests on layers of speculation, requiring the Court to guess as to future electoral outcomes years in advance and assume that a hypothetical future administration might revisit the OLC Opinion. Article III does not permit jurisdiction to rest on such attenuated

9

possibilities. A lack of certainty about the future is not a "certainly impending" Article III injury. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401–02 (2013).

*Third*, Plaintiffs veer into an irrelevant discussion about the constitutional status of various firearms. Pls.' Opp'n at 22–25. They devote multiple pages to arguing that the scope of Second Amendment protection for certain firearms is uncertain. *Id.* But that issue is not before the Court. Nothing in Plaintiffs' complaint or motion for summary judgment challenges the boundaries of constitutionally protected firearms. Plaintiffs' case is about the facial validity of § 1715. There is no dispute that Shreve's handgun—the one she wishes to ship—is constitutionally protected. Nor do Plaintiffs claim anywhere that they plan on mailing a specific firearm that's constitutional status is in doubt, which is fatal to any claim that they can pursue pre-enforcement review and, in any event, would present an entirely different case with entirely different analysis anyway. Plaintiffs' abstract discussion of hypothetical edge cases is beside the point.

In the end, the federal government's disavowal of prosecution eliminates any present case or controversy as to Plaintiffs' challenge to § 1715. As in *Salvation Army*, where the Third Circuit did not even consider past enforcement history because the disavowal of enforcement was enough, this Court should end its analysis here and dismiss Plaintiffs' challenge to § 1715. 919 F.2d 183, 190–93. But even if the Court continued on to past enforcement history, it does not help Plaintiffs.

2. <u>Past enforcement indicators (e.g., no prosecutions of § 1715 in Pennsylvania in at least a decade) show no credible and substantial threat of prosecution.</u>

Plaintiffs rely entirely on Shreve to establish justiciability. *See generally* Pls.' Statement of Material Facts, ECF 25. Shreve lives in Pennsylvania—and Plaintiffs have not come forward with any prosecution of § 1715 in Pennsylvania in over two decades. That further dooms Plaintiffs' already non-justiciable challenge to § 1715. Plaintiffs contend that Defendants rely on "artificially[] cherry-picked parameters," such as prior enforcement for similar conduct and prior

10

enforcement within the relevant jurisdiction.[3] Pls.' Opp'n at 14. But those are not invented constraints. They are the factors the Third Circuit directs courts to consider: whether the challenged statute "has been enforced against the plaintiff, a closely related party, or others for similar conduct." *Nat'l Shooting Sports Found.*, 80 F.4th at 219–20. Plaintiffs attempt to run away from these factors because they point away from a credible and substantial threat of prosecution. Plaintiffs have not shown that the government has prosecuted Shreve, anyone in Pennsylvania in over twenty years, a closely related party, or others for similar conduct.

Plaintiffs first attempt to establish a credible threat of prosecution by compiling a long list of prosecutions under the statute over the last 25 years.[4] Pls.' Opp'n at 14 n.9. But that string cite undermines—not helps—their cause. Most of the prosecutions cited by Plaintiffs were in Puerto Rico and the Virgin Islands and involved interstate firearm trafficking schemes, felons shipping firearms, or individuals shipping privately manufactured firearms (i.e., ghost guns), loaded firearms, or firearms with obliterated serial numbers. *See, e.g.*, *United States v. Bachart*, No. 1:14-cr-267, ECF 18 (D. Idaho) (prosecuting defendant for shipping a loaded firearm that discharged while package was in the hands of a postal employee); *United States v. Ferguson*, No. 4:22-cr-423, ECF 43, 46 (N.D. Cal.) (prosecuting defendant under multiple counts for "traffick[ing] dozens of firearms from Texas and Arizona into California," including guns with high-capacity magazines

---

[3]  Contrary to Plaintiffs' misstatement, Defendants never argued that a credible threat of enforcement exists "only if" one of three factors is present. *See* Pls.' Opp'n at 14. Rather, consistent with Third Circuit precedent, Defendants argued that these are relevant indicators that courts consider when determining if Plaintiffs have met *their* burden in showing a credible threat of prosecution.

[4] Contrary to Plaintiffs' misstatements, Defendants never asserted that there were only a "spattering of prosecutions" within the entirety of § 1715's one-hundred-year history or that § 1715 prosecutions "involve only cross-border arms trafficking conspiracies by illegal aliens." *See* Pls.' Opp'n at 14–17. Defendants were responding to the four prosecutions that Plaintiffs—not Defendants—relied on in their complaint and summary judgment brief to support their claim and burden that they face a credible and substantial threat of prosecution. *See* Compl.¶ 26; Br. in Support of Mot. for Summ. J. at 12–13, ECF 24.

11

and assault-style weapons); *United States v. Mendoza*, No. 5:25-cr-00014, ECF 26 (C.D. Cal.) (prosecuting defendant for mailing ghost guns, including a gun with an obliterated serial number); *United States v. Perez, Baker, Soto*, No. 3:23-cr-92, ECF 196 (D. Conn.) (prosecuting previously convicted felons for shipping ghost guns, large capacity magazines, and assault-style weapons); *United States v. Acosta-Cooper*, No. 6:16-cr-223, ECF 20 (M.D. Fla.) (prosecuting defendant for firearms trafficking enterprise, including shipping firearms "concealed inside toy boxes"); *United States v. Peroba*, No. 4:24-cr-40023, ECF 32 (D. Mass.) (prosecuting an illegal alien for shipping firearms to another illegal alien and others; at least one of those firearms was used in an armed robbery); *United States v. Doyle, Palmer, Spain, Meagher, Isles*, No. 9:15-cr-32, ECF 2 (D. Mont.) (prosecuting previously convicted felons for exporting to foreign countries firearms with obliterated serial numbers); *United States v. Acosta-Couret*, No. 3:11-cr-141, ECF 1-1 (D.P.R.) (prosecuting previously convicted felon for firearm trafficking scheme, where firearms were hidden with children's toys and then shipped); *United States v. Andino-Vazquez, Negron-Vazquez*, No. 3:13-cr-591, ECF 3-1 (D.P.R.) (prosecuting defendants, including one five-time convicted felon, for trafficking firearms in boxes disguised as children's toys).

These scenarios bear little similarity to Shreve wanting to ship her handgun intrastate to her father, Shreve Decl. ¶¶ 5–6, to Mr. Gillam wanting to ship his handgun intrastate to a family member, Gillam Decl. ¶ 5, or to Mr. Valdes wanting to ship his handgun to a federal firearm licensee, Valdes Decl. ¶ 8. Indeed, even though prosecutions have been undoubtedly brought under § 1715, a credible and substantial threat of prosecution is diluted when most of the prior prosecutions were for different conduct in different jurisdictions. *See Bronson v. Swensen*, 500 F.3d 1099, 1108 (10th Cir. 2007) ("[T]he credibility of a 'threat' is diluted when a factual dissimilarity

12

exists between the plaintiff's intended future conduct and the conduct that triggered any prior prosecutions under the challenged statute.").

Plaintiffs then attempt to demonstrate justiciability by focusing on two prior prosecutions under § 1715. That attempt fails. Plaintiffs wholly mischaracterize the first prosecution they cite. Plaintiffs assert that a "recent" prosecution occurred in this district in "2023" involving a police officer who "innocent[ly]" shipped a firearm through the U.S. Postal Service. Pls.' Opp'n at 16. But, in fact, that case dates back over twenty years to 2003—not 2023—and the underlying conduct was anything but "innocent." *See United States v. Andrew W. McNelis, III*, No. 2:03-cr-00129 (W.D. Pa.). The officer was prosecuted for stealing a firearm from a police evidence locker and then mailing it after the rightful owner sought its return and the weapon was discovered missing. *See* Defs.' Ex. 5. The officer was charged with violating 18 U.S.C. § 922(j) (receipt or possession of a stolen firearm) in addition to § 1715. *Id.* That prosecution is of no help to Plaintiffs because it is decades old and involves conduct unlike the future intended conduct by Shreve or the other associational Plaintiffs' members. Notably, Plaintiffs can only identify *one* § 1715 prosecution in this entire state—and it occurred decades ago and involves wholly different conduct.

The second prior prosecution Plaintiffs rely on fares no better. It is an unidentified prosecution of an unknown individual at an unknown time, supported only by secondhand assertions. Plaintiffs state, through Finnell, that in a "review of DOJ prosecutions," he "discovered" that some unnamed GOA member was prosecuted in Ohio for possessing and shipping an unregistered firearm. Second Decl. of Val W. Finnell ("Sec. Finell Decl.") ¶ 9, ECF 54-1. It is unclear whether this alleged prosecution is one of the two Ohio cases Plaintiffs listed in their string cite at footnote nine. If it is, that only further undermines their position since the first Ohio prosecution cited involved exporting firearms with obliterated serial numbers disguised as

13

common household appliances to Saudi Arabia, *see United States v. Buschman*, No. 5:24-cr-00456, ECF 1 (N.D. Ohio), and the other involved a previously convicted felon shipping an unregistered National Firearms Act firearm and silencer, *see United States v. Warin*, No. 3:03-cr-00754, ECF 86 (N.D. Ohio). Neither conduct bears any similarity to Shreve (a law-abiding citizen) wanting to ship a lawful handgun intrastate to her father. And Plaintiffs' failure to produce readily available information about this alleged prosecution—like the case number or any specific details—warrants a negative inference that this unidentified prosecution of an unidentified individual at an unidentified time does not, in fact, resemble Shreve's intended future conduct. *See Int'l Union, UAW. v. NLRB.*, 459 F.2d 1329, 1336 (D.C. Cir. 1972) ("[W]hen a party has relevant evidence within his control which he fails to produce, that failure gives rise to an inference that the evidence is unfavorable to him.").

Plaintiffs cannot establish a justiciable pre-enforcement challenge to § 1715. Despite Plaintiffs' reliance on past prosecutions, Plaintiffs cannot show a "real threat of prosecution in the face of assurances of non-prosecution from the government merely by pointing to a single past prosecution[.]" *D.L.S.*, 374 F.3d at 975. This Court should thus dismiss Plaintiffs' challenge to § 1715 for lack of jurisdiction.

### B. The Court lacks jurisdiction over Plaintiffs' pre-enforcement challenge to the postal regulations since USPS is changing its regulations to conform with the OLC Opinion.

Plaintiffs separately challenge the U.S. Postal Service's regulations that prohibit the shipment of concealable firearms. Pls. Opp'n at 19–20. The U.S. Postal Service is still following its current regulations that prohibit the shipment of concealable firearms, as Plaintiffs point out in

their recent notice (ECF 54).[5] But that is not the end of the story. The U.S. Postal Service is following the proper legal process to change its regulations to implement and adopt the OLC opinion. *See* 39 U.S.C. § 3001(m) (requiring postal regulations to be promulgated in accordance with the APA under Title 5); *see also Arizona v. City & Cnty. of San Francisco*, 596 U.S. 763, 765 (2022) (Roberts, C.J., concurring) (stating that the government cannot "circumvent" notice and comment requirements through the entry of consent judgments). On April 2, 2026, the U.S. Postal Service published a proposed rule that would make "[l]awful firearms, including pistols, revolvers, shotguns, and rifles . . . mailable." *See* Defs.' Ex. 3 at § 431.3.  Plaintiffs thus cannot establish a prudentially ripe challenge to regulations that will soon be superseded by a new regulation.

"[T]he doctrine of prudential ripeness ensures that Article III courts make decisions only when they have to, and then, only once." *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 387 (D.C. Cir. 2012). Prudential ripeness ensures that judicial economy is not "disserved" where "judicial review might prove unnecessary[.]" *Id.* The ripeness doctrine is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction," *Reno v. Catholic*

---

[5]  In that notice, Plaintiffs also claim that an ATF letter establishes a present case or controversy. *See* ECF 59-2. It does not. As a preliminary matter, ATF is not a defendant and does not criminally enforce § 1715, nor does it enforce the implementing postal regulations, so that letter has no bearing on whether the Department of Justice will prosecute the statute or whether the U.S. Postal Service will permit mailing firearms. On substance, ATF acted appropriately and consistently with the government's position here for at least three reasons. First, ATF in its letter states that individuals may mail firearms "as allowed by Postal Service regulation." *See* ECF 59-2. The U.S. Postal Service is seeking to change its regulations to permit the mailing of lawful firearms, like handguns. Second, ATF was rightly flagging the *existence* of § 1715 to an individual seeking advice about interstate shipment of firearms; just because the federal government is no longer prosecuting § 1715 as applied to constitutionally protected firearms does not mean that shippers would not face liability under § 1715 for mailing firearms that are not constitutionally protected (e.g., undetectable firearms prohibited by 18 U.S.C. § 922(p)). Third, ATF was rightly encouraging an individual seeking advice from ATF in February to "exercise caution" when mailing certain firearms.  Postal regulations currently do not permit the mailing of concealable firearms—regulations that the U.S. Postal Service is now actively seeking to change. And this litigation (including efforts of various states to intervene) has not reached final judgment.  ATF thus provided appropriate notice that this area of law was subject to new developments.  Plaintiffs improperly try to spin this notice as a threat of prosecution, which it is not.

*Soc. Servs., Inc.*, 509 U.S. 43, 57 n. 18 (1993) (citations omitted), but even in a case raising only prudential concerns, the question of ripeness may be considered on a court's own motion, *id.* Because prudential ripeness goes to the Court's jurisdiction, it can be raised at any time. *See Grp. Against Smog & Pollution, Inc. v. Shenango Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016).

In deciding whether a dispute is prudentially ripe, courts consider "the fitness of issues for judicial review and the hardship to the parties if judicial consideration is withheld." *Amenuvor v. Mazurkiewicz*, 494 F. App'x 198, 200 (3d Cir. 2012) (citation omitted). Both factors strongly favor withholding judicial review of regulations that will soon be superseded. Indeed, where regulations have been superseded, a challenge to the earlier regulations are moot, quickly rendering futile any judicial decision or injunction as to the defunct regulations. *See, e.g.*, *Nat. Res. Def. Council, Inc. v. U. S. Nuclear Regul. Comm'n*, 680 F.2d 810, 813–14 (D.C. Cir. 1982) (holding that promulgation of new regulation moots challenge to previous regulation).

Plaintiffs' pre-enforcement challenge is not fit for judicial review. In *American Petroleum*, the D.C. Circuit held that a dispute over a regulation was not prudentially ripe because the agency had proposed a new rule and was thus in the process of changing the challenged regulation. 683 F.3d at 388. The court there reasoned that if the proposed rule was adopted, the new rule "would necessitate substantively different legal analysis and would likely moot the analysis [the court would] undertake if deciding the case now." *Id.* And similarly, in *Geneva College*, a court in this district found a dispute unripe where the government was "taking concrete steps to ensure that the law will be changed to reflect the concerns expressed by [the plaintiff]." 929 F. Supp. 2d at 426. So too here. The U.S. Postal Service has proposed changing its regulations to permit the mailing of "[l]awful firearms, including pistols, revolvers, shotguns, and rifles," which is what Plaintiffs say they want to be able to do. *See, e.g.*, Shreve Decl.

16

Plaintiffs will not suffer significant hardship waiting for the regulation change. The U.S. Postal Service proposed its new rule on April 2 and comments from the public are due soon on May 4, 2026. *See* Defs.' Ex. 3. The public has been unable to mail firearms through the U.S. Postal Service for almost the entirety of this nation's history—waiting several more months for the U.S. Postal Service to issue its final, superseding rule will not cause catastrophic, irreparable harm. This modest delay is further mitigated by the fact that Plaintiffs now can provide comments to the U.S. Postal Service about its proposed firearm regulations, thereby ensuring "public participation and fairness to affected parties." *Nat'l Ass'n of Home Health Agencies v. Schweiker*, 690 F.2d 932, 949 (D.C. Cir. 1982) (citation omitted). Moreover, the mailing of firearms raises potential public safety concerns. *Cf. Bachart*, No. 1:14-cr-267, ECF 18 (D. Idaho) (prosecuting defendant for shipping a loaded firearm that discharged while package was in the hands of a postal employee). The U.S. Postal Service therefore has worked to implement the OLC opinion by proposing a uniform regulatory framework to permit the mailing of handguns while ensuring such mailings are done safely. An order enjoining the existing regulations without any replacement could create a regulatory vacuum and put postal employees and the public at risk.

If the Court is not inclined to dismiss Plaintiffs' challenge to the regulations for lack of prudential ripeness, the Court should, at a minimum, (1) deny Plaintiffs' motion for summary judgment challenging § 1715 and dismiss that part of Plaintiffs' claim because there is no conceivable threat of prosecution of the statute from the Department of Justice; and (2) hold in abeyance Plaintiffs' motion for summary judgment challenging the regulations until U.S. Postal Service issues the superseding regulations. As noted above, the new regulations will likely moot this aspect of Plaintiffs' challenge, thus there is no need for the Court to issue an advisory opinion on the legality of the current regulations when changes are likely forthcoming. A stay would

17

therefore be an appropriate exercise of this Court's authority "to control the disposition of the causes on its docket." *See Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936).

### C. GOF lacks standing for additional reasons.

As explained above, GOA and GOF lack associational standing to bring a suit on their members' behalf because none of their members would have a justiciable case to challenge § 1715 or the implementing postal regulations. *See Blunt*, 767 F.3d at 279–80. On this alone, this Court should dismiss Plaintiffs' challenge for lack of jurisdiction. But GOF's standing fails for more reasons. GOF does not have members, and thus it must show it possesses "indicia of membership." *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 344 (1977). In *Hunt*, an organization had "indicia of membership" where its supporters or members elected leadership, served as the organization's leadership, and financed the organization's activities, including the case's litigation costs.  432 U.S. at 344–45. A court in this circuit found an association with no members lacked indicia of membership where the association did not "demonstrate any formality," members did not pay fees, and no bylaws were followed that would "define and protect the rights of members." *Camp Hill Borough Republican Ass'n v. Borough of Camp Hill*, 665 F. Supp. 3d 617, 626–27 (M.D. Pa. 2023), *aff'd*, 101 F.4th 266 (3d Cir. 2024).

Plaintiffs here have not shown that GOF possesses indicia of membership. For starters, Plaintiffs still have not offered any admissible evidence about GOF. They submit no declaration from any GOF employee, board member, or anyone with firsthand knowledge of GOF's operations. Instead, they rely on a declaration from Finnell whose spouse chairs one of GOA's advocacy groups. *See* Sec. Finnell Decl. ¶ 7. Such attenuated, secondhand information cannot establish the structure and functioning of GOF at the summary judgment stage. *See* Fed. R. Civ. P. 56(c)(1). Even setting aside its inadmissibility, the proffered evidence remains insufficient.

Plaintiffs do not show that GOF has members or supporters who elect leadership, that it operates as a formal entity, or that it maintains formal governing documents such as bylaws. GOF thus lacks the indicia of membership necessary to establish its associational standing.

## II.    Plaintiffs seek improper remedies.

Even if the Court grants Plaintiffs' motion for summary judgment, the Court should not grant the overly broad relief Plaintiffs seek.

First, this Court cannot grant relief "broader than necessary to provide complete relief to each plaintiff with standing to sue." *Trump v. CASA, Inc.* 606 U.S. 831, 861 (2025). So the maximum relief this Court can award is to those Plaintiffs this Court determines have standing to sue—not to everyone in the country nor to everyone in this judicial district.

Second, if this Court is inclined to grant GOA or GOF any relief, it should limit any injunction to the current members that GOA and GOF have chosen to identify and who have standing. Such relief is consistent with Rule 65, Article III, and equity.

**Rule 65.** "[T]he specificity provisions of Rule 65(d) are no mere technical requirements," but rather exist to ensure that courts do not enter injunctions "too vague to be understood." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974). An injunction is too vague to be understood and unworkable if it applies to all of GOF's and GOA's unknown, unnamed members—information that is wholly within the possession and control of GOF and GOA. *See also* Fed. R. Civ. P. 17(a)(1) (requiring that "[a]n action must be prosecuted *in the name* of the real party in interest" (emphasis added)).

**Standing.** Standing requires the court to ensure not only that Plaintiffs have a concrete injury but that the injury can be *remedied* by the court, thereby intertwining standing with the scope of relief. Courts have therefore recognized that standing impacts what kind of relief courts grant. *See, e.g.*, *Whitman v. Soc. Sec. Admin.*, 2025 WL 1357428, at *5 (E.D. Va. Apr. 1, 2025), *report*

19

*and recommendation adopted*, 2025 WL 1699346 (E.D. Va. June 17, 2025); *Fla. Decides Healthcare, Inc. v. Byrd*, 790 F. Supp. 3d 1335, 1350 n.14 (N.D. Fla. 2025). And this is consistent with the Supreme Court's recent admonition that courts should only grant relief to those who have established "standing to sue." *See CASA, Inc.* 606 U.S. at 861. This Court should, therefore, grant relief only to those identified members who have standing to sue.

**Equity.** "Equity is concerned with justice not only for the plaintiff but also for the defendant." Samuel L. Bray, *Multiple Chancellors: Reforming the National Injunction*, 131 Harv. L. Rev. 417, 468 (2017). In line with equitable principles, this Court should limit any injunctive relief to *current* members who have been identified by GOA and GOF. It would be plainly inequitable to grant relief to all current unknown members and to all future unknown members. *See, e.g.*, *Ass'n of Am. Physicians & Surgeons v. FDA*, 13 F.4th 531, 541 (6th Cir. 2021) ("Should an injunction . . . . apply only to existing members on the date of the judgment? Or should it cover future members—seemingly allowing an organization to advertise the injunction in its marketing materials?"); *Catholic Benefits Assoc. v. Kennedy*, No. 3:23-cv-203, ECF 78 at 18 (D.N.D. June 5, 2025) (granting relief to existing members only).

To the extent this Court grants Plaintiffs any relief (which it should not), this Court should limit such relief to GOA's and GOF's members who have been identified in this litigation.

CONCLUSION

Plaintiffs ask this Court to issue an advisory opinion on the constitutionality of § 1715, despite facing no threat of prosecution by the Department of Justice and despite the U.S. Postal Service amending its regulations to permit Plaintiffs and their members to ship their handguns through the mail. The Court should not issue such an advisory opinion. Instead, the Court should enter judgment in favor of Defendants and dismiss this case for lack of jurisdiction.

20

Dated: April 15, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANDREW I. WARDEN
Assistant Branch Director
Federal Programs Branch

*/s/ Samuel S. Holt*
SAMUEL S. HOLT (CO Bar No. 59613)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Telephone: (202) 674-9761
Fax: (202) 616-8470
Samuel.Holt2@usdoj.gov

*Counsel for Defendants*

21